[No. 25790. Department Two. March 18, 1936.]

WILLIAM H. WESTERLAND, *Respondent*, v. THE ARGONAUT GRILL, *Appellant*.[1]

*Roberts & Skeel* and *W. R. McKelvy,* for appellant.
*Colvin & Rhodes,* for respondent.

HOLCOMB, J.—This action is one to recover damages by respondent because of injuries sustained by the

[1]Reported in 55 P. (2d) 819.

use of excessive force by the agent of appellant in ejecting respondent from a beer parlor operated by appellant in Seattle. Appellant made timely motions for dismissal at the end of respondent's case, at the end of all of the testimony, and for a judgment n. o. v. after judgment. Appellant made no motion for a new trial, and the evidence admitted and instructions given are of course beyond question.

Appellant, by one of its officers, admitted, in answer to interrogatories, that one Chris Reed was employed as head waiter and night manager of the grill from eight p. m. to six a. m., and that on the particular night in question, March 12 and 13, 1934, Reed was in charge of the Argonaut Grill.

The evidence on behalf of respondent, which the jury was entitled to believe, was in substance as follows: He and a friend entered the grill some time during the evening, leaving soon after having had a few drinks of beer. Returning about midnight, respondent, while playing a marble machine or pin wheel game, made a score that entitled him to two glasses of beer, which the bartender gave him. The friend left, and respondent played the machine a second time, again won and asked the bartender to verify his score. He continued playing and then asked the bartender for the drinks which he had won on the second occasion, but the bartender claimed he knew nothing about it. About that time, Reed inquired what was the trouble, and respondent said he had won some beers but the bartender would not give them to him. Reed asked to see the score, but was informed the machine had since been played and the score would not appear thereon. When asked by Reed if he had verified the score, the bartender gave a negative reply.

Respondent again went to the machine and, while

playing, tilted it so the balls would go into their proper places, upon which Reed told him that shaking the table disqualified him to play further and ordered him out of the place. Respondent, insisting that he would not leave until he had his beers, walked to the bar and, standing with his back thereto and looking around to see who had heard the discussion between him and Reed, observed Reed in front of him swinging a "sap" or blackjack about six inches from his face. Respondent took a step, but his legs buckled under him and someone grabbed him, asking what was the trouble, and several people got hold of him. Becoming dazed, he knew little after that until he came to in the hospital.

He did not consider himself drunk, as, in five hours that evening, he had nothing but beer, not to exceed eight or nine glasses, practically all in the Argonaut. His eye was ruptured and lacerated, making removal necessary. At the time of the injury, he was about two weeks less than thirty-three years of age. The jury awarded him $4,750, which recovery is not challenged here.

There was considerable conflict in the testimony between appellant's witnesses and those of respondent, which was for the jury to reconcile. There was competent proof that Reed was in charge of the Argonaut at the time of the assault and injury; that Reed ordered respondent to leave the place and respondent refused to go until he had obtained the two beers he claimed he had won; that Reed hit respondent with a "sap" or blackjack, seriously injuring respondent's eye; that Reed was acting in the course of his duties as appellant's night manager; and that Reed used more force than was necessary.

For reversal of the judgment, appellant relies upon the following of our cases: *Chase v. Knabel,* 46

Wash. 484, 90 Pac. 642, 12 L. R. A. (N. S.) 1155, where the assault and battery was committed because of ill-will, jealousy, or hatred on the part of the waiter or waiters; *Matsuda v. Hammond*, 77 Wash. 120, 137 Pac. 328, 51 L. R. A. (N. S.) 920, where the agent was authorized to make collection for goods sold, but the agent went outside of his authority and committed assault and battery in attempting to collect a bill; *Austin v. Metropolitan Life Ins. Co.*, 106 Wash. 371, 180 Pac. 134, 6 A. L. R. 1061, where a patron, after being requested to leave, was gently ejected from an office with no more force than was necessary to remove her; *Crouch v. Ringer*, 110 Wash. 612, 188 Pac. 782, 9 A. L. R. 374, where the proprietor of a market requested one making a disturbance to leave and upon noncompliance therewith used no more force than necessary to eject her.

Great reliance is also placed on *Estes v. Brewster Cigar Co.*, 156 Wash. 465, 287 Pac. 36, wherein we held that an employee of a store who pursues a customer peaceably leaving, and starts a pursuit and hue and cry calling "thief-robber," when the customer had committed no offense or wrong against the employer, was not acting within the scope of his employment nor in any way furthering the business of the employer, who, therefore, was not liable for the servant's acts. We there recognized the rule that the employer is to be held responsible under the doctrine *respondeat superior* if the acts of the servant were in furtherance of his master's business and within the scope of the servant's employment.

All of the above cited cases by this court recognize the fundamental principle that a master is not liable for all assaults made by his servant. It is only for such as are done in the master's business that the master is liable. If a servant steps aside from his

master's business and, in order to effect some purpose of his own, commits an assault, the master is not liable. See *Everingham v. Chicago, B. & Q. R. Co.*, 148 Iowa 662, 127 N. W. 1009, Ann. Cas. 1912C 848.

In the *Austin* case, *supra*, we reaffirmed a rule that had been announced in *Guterson v. Jensen*, 100 Wash. 113, 170 Pac. 352, to the effect that one injured by an employee could recover only for such injuries as may have been due to the excessive force, if there were such, in removing him from the premises.

It is clear that appellant, in citing the cases above and others, disregards that rule. In the present case, appellant's servant not only used more force than was necessary, if the testimony of respondent was entitled to belief, as the jury evidently considered, but used brutal violence. He was authorized to eject people if they were drunk or disorderly, but no law anywhere ever authorizes an agent or servant to use excessive force in so doing. Respondent was probably contentious and insistent, but, obviously, was not pugnacious. He had stood with his back to the bar for a minute or so when Reed suddenly struck him with a heavy, blunt instrument, totally destroying his eye. There was no justification or provocation whatever for such excessive force and violence.

This court announced the principle in *DeLeon v. Doyhof Fish Products Co.*, 104 Wash. 337, 176 Pac. 355, and reaffirmed it in *Nolan v. Fisher Co.*, 172 Wash. 267, 19 P. (2d) 937, that one is responsible not only for his own acts, but for the acts of his employee when the acts are done in the scope of the employment and in furtherance of the business that is intrusted to the employee; and so long as the thing the servant is doing is in the furtherance of the master's business, the master must answer for the unlawful manner in which the act is done.

416

This case is governed by the rule announced in those cases. Other cases cited by appellant, where the servant stepped aside from the prosecution of the master's business and committed an assault, are not in point.

The judgment is affirmed.

MILLARD, C. J., MAIN, and BLAKE, JJ., concur.

BEALS, J., concurs in the result.