[No. 31936. *En Banc.* April 14, 1953.]

HAROLD LANGNESS *et al., Respondents,* v. PAAVO KETONEN *et al., Appellants.*[1]

[1]Reported in 255 P. (2d) 551.

*Copeland & Tollefson,* for appellants.

*Goodwin, Eastvold & Hicks,* for respondents.

HAMLEY, J.—This is an action to recover damages for personal injuries sustained when Mrs. Gay L. Langness was kicked in the face by a wrestler known as Skagway Clements.

The suit was brought against Clements, Paavo Ketonen the promoter, and Leonard Porter. The action was dismissed as to Porter before the case was submitted to the jury. The jury returned a verdict against Clements and Ketonen in the sum of nine thousand dollars. The trial court denied a motion for judgment n. o. v. and entered judgment in accordance with the verdict. Ketonen has appealed.

The kicking incident occurred at a public wrestling exhibition held at the Tacoma armory on the night of October 13, 1950. Respondents occupied seats in the third row. Clements wrestled in the last match of the evening. For some reason, the referee disqualified him and terminated the match. One of respondents' witnesses described Clements' actions in these words:

"Well, after the match was over with, he showed his disapproval of the decision by, oh, he argued with the referee and went into a few little tantrums around the ring there and back and forth, and thrashed around a bit . . . Mr. Clements kicked through the ropes and struck her . . . I would say he had his back towards Mrs. Langness since he was facing the referee here. They were arguing . . . I would say he kicked backward . . . Well, he did some kicking out in away from the edge of the ropes too, and he was jumping up and down swinging his feet like this and arguing with the referee. He was putting on quite a little tantrum there. It was very spectacular."

The evening's activities having terminated with Clements' disqualification, Mr. and Mrs. Langness proceeded past the ring toward the exit. Mrs. Langness, walking in front of her husband, reached a point at the side of the ring. As she put on her coat, she turned to see where her husband was. At the moment she was facing the elevated ring, Clement's right foot "lashed back" and struck her in the face. We specifically disregard (as apparently did the jury) the testimony that she was observed hitting Clements on the right foot with one of her shoes.

The first assignment of error questions the action of the trial court in denying appellant's motion for judgment n. o. v.

The theory of respondents' case against the promoter is based upon the doctrine of *respondeat superior*, it being asserted that the relationship between the wrestler and promotor was that of employer and employee, and that the wrestler kicked Mrs. Langness while acting within the scope of his employment.

In arguing that his motion for judgment n. o. v. should have been granted, appellant contends (1) that under the evidence it should be held, as a matter of law, that the wrestler was an independent contractor, and (2) that if it be assumed that an employer-employee relationship existed. it should be held, as a matter of law, that, in kicking Mrs. Langness, the wrestler was not acting within the scope of his employment.

Turning to the first of these contentions: Is there, in this record, substantial evidence that Clements was an employee of Ketonen?

■ The evidence to be considered is that which has a bearing upon Ketonen's right to control the manner in which Clements conducted himself in the ring. That the right of control is the primary test of the relationship, is made clear in many of our decisions. For example, in *Nawrocki v. Cole,* 41 Wn. (2d) 474, 249 P. (2d) 969, we said:

"An independent contractor is one who, in the pursuit of an independent business, undertakes to perform a specified piece of work or to render a particular service for another, without submitting to control in the manner of performance. *Smith v. Ludwig,* 16 Wn. (2d) 155, 157, 132 P. (2d) 735 (1943), and case cited. The principal question is, who has the right to control the manner of doing the work? The independence of the relation is not affected by a reservation, by the one ordering the work, of a right to supervise it merely to determine whether or not it is done according to the contract. *Seattle Aerie No. 1 of Fraternal Order of Eagles v. Commissioner of Unemployment Compensation and Placement,* 23 Wn. (2d) 167, 172, 160 P. (2d) 614 (1945), and cases cited."

■ The evidence is not disputed that the wrestling ring in which Clements performed was located on premises leased and controlled by appellant. It was likewise uncontradicted that appellant directly benefited from Clements' wrestling performance.

These facts permitted the jury to infer, at least in the absence of very persuasive evidence to the contrary, that Clements was the employee of Ketonen. *Simila v. Northwestern Imp. Co.,* 73 Wash. 285, 131 Pac. 831; *Washington Recorder Pub. Co. v. Ernst,* 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667; *Joslin v. Idaho Times Pub. Co.,* 56 Ida. 242, 53 P. (2d) 323 (citing many cases). See, also, *Clausen v. Department of Labor & Industries,* 15 Wn. (2d) 62, 129 P. (2d) 777. While the cited cases involve a variety of factual situations which differ from that now before us, we see no reason why the basic rule there announced should not be here applied.

In addition to this inference which the jury was permitted to draw, there was evidence that it was the custom of such promoters in Tacoma to control the actions of wrestlers while the latter were in the ring. Nick Zvolis, a resident of Tacoma for forty years, had been a wrestler, a referee, and a promoter. He testified:

"Q. About approximately how many wrestling matches have you been engaged in, Mr. Zvolis? A. Oh, I can't figure up. Thousands, thousands. Q. Thousands. How many wrestling matches have you refereed? A. How many I referee; how much hair I got on my head. THE COURT: You just answer the question, Mr. Zvolis. THE WITNESS: All right. I don't know, a thousand of them, lots of them. Every six nights a week. Q. Have you ever been a promoter, Mr. Zvolis? A. Yes, sir . . . Q. Are you familiar with the customs in the trade for the last thirty years, up to today? A. Yes. . . . Q. Mr. Zvolis, who, if anyone, if you know, is in complete control of a wrestling exhibition? A. The promoter, of course. . . . Q. Who gives the directions to the wrestler? A. The promoter gives the wrestler . . . Q. Does the promoter give them any instructions as to how and what he is to do in the ring? A. Yes, the promoter give him · . . . The promoter tells the referee what to do and the referee tells the wrestler."

The probative value of evidence as to local custom, in proving the existence of an employer-employee relationship, is commented upon in 1 Restatement, Agency, 486, § 220, Comment (2) (e).

Ketonen testified that he did not exercise control over Clements or any other wrestler while the exhibition was in progress. Moreover, under the statutes of this state, it would be unlawful to exercise control for the purpose of producing a sham or fake wrestling match or exhibition. RCW 67.08.110 (Rem. Rev. Stat. (Sup.), § 8276-17); RCW 67.08.120 (Rem. Rev. Stat. (Sup.), § 8276-18).

The jury, however, was not compelled to believe Ketonen. If they did disbelieve him, this does not necessarily imply a finding that Ketonen exercised control for the purpose of staging a sham or fake exhibition. But, even if such a finding was implicit in their disbelief of his testimony, the jury

was still free to do so. Pertinent to this point is the comment in 1 Restatement, Agency, 487, *supra*:

"The fact that the State regulates the conduct of an employee through the operation of statutes requiring specific acts to be done or not to be done does not prevent the employer from having such control over the employee as to constitute him a servant."

To the extent, if any, that Zvolis' testimony may be regarded as showing a local custom of promoters to control conduct within the wrestling ring for the purpose of producing a sham or fake exhibition, it was subject to exclusion if proper objection had been made. Evidence as to a custom contrary to the statutes of the state may not be received. See *Redmon v. Andrews*, 147 Wash. 390, 266 Pac. 178. But no objection to the testimony was made on that ground, and, in any event, the reception of such evidence was not assigned as error.

We are of the view that there was sufficient evidence to the effect that an employer-employee relationship existed, to take that question to the jury.

Appellant contends further, however, that, assuming this to be true, it should be held, as a matter of law, that, in kicking Mrs. Langness, Clements was not acting within the scope of his employment. In this connection appellant calls attention to *Matsuda v. Hammond*, 77 Wash. 120, 137 Pac. 328, and *Brazier v. Betts*, 8 Wn. (2d) 549, 113 P. (2d) 34. In each of these cases, we held, under the facts shown, that in committing an assault upon a third person the employee acted outside the scope of his employment.

The *Matsuda* and *Brazier* decisions are but examples of the many cases in which we have held that, when an employee steps aside from his employer's business and, in order to effect some purpose of his own, commits an assault, such act is committed outside the scope of employment, and the employer is not liable. See the cases listed in *Westerland v. Argonaut Grill*, 185 Wash. 411, 55 P. (2d) 819. But it is equally well established that, if the injurious act, though amounting to an assault, is committed by authority of the employer, expressly conferred or fairly implied from

the nature of the employment and the duties incident thereto, it is committed within the scope of employment, and the employer is liable. *Nolan v. Fisher Co.*, 172 Wash. 267, 19 P. (2d) 937; *Westerland v. Argonaut Grill, supra.*

In the two last cited cases, it was held that the question of whether the assault was committed within the scope of employment was a question for the jury. We believe that it was likewise a jury question here. The jury could have found, from the evidence, that Clements was under instructions to put on a "tantrum" for the purpose of creating excitement and the "spectacular" display to which one witness referred. If, pursuant to such an instruction, Clements took it into his head to kick back towards spectators moving along the aisle, then that would be sufficient to support a finding that the assault was committed while he was acting within the course of his employment. It is not necessary to show that the employer specifically instructed his employee to commit an assault.

The facts of this case clearly distinguish it from *Wiersma v. Long Beach,* 41 Cal. App. (2d) 8, 106 P. (2d) 45, where the wrestler was held not to be acting within the scope of his employment at the time the injuries were inflicted. In the *Wiersma* case, the wrestler, during the course of an exhibition, suddenly and apparently without provocation, jumped from the ring, ran toward the plaintiff, and hit him over the head with a chair. See the interesting comment on this case by Kenneth H. York, in William L. Prosser: The Judicial Humorist, 276.

There is also another reason why appellant's contention on this branch of the case is without merit. While there was considerable evidence to the effect that the injuries resulted from a wilful assault, the jury was not obliged to reach this conclusion. There was substantial evidence to the effect that the kick which injured Mrs. Langness was due to negligence rather than to an intentional assault. Mrs. Langness testified that she did not believe Clements was trying to kick her. Jack Peters, a witness produced by respondents, testified as follows on cross-examination:

"Now, as I understand your description, he didn't just make a definite kick, but, rather, was jumping and—A. Yes. Q. (continuing) swinging his foot? A. That is right. Q. In other words, he didn't kick back like that, like a kick at something, hard? A. Well, if you mean with the intention of kicking somebody, no, it didn't appear that way to me, no. Q. In other words, he was standing on one foot and kicking and swinging forward and back? A. That is right."

In view of the foregoing, it is our opinion that it should not be held, as a matter of law, that Clements was acting outside the scope of his employment at the time he kicked Mrs. Langness.

The trial court did not err in denying the motion for judgment n. o. v.

■ Appellant assigns error upon the failure of the trial court to give his requested instructions Nos. 11, 12, 13, and 14. Requested instructions Nos. 11, 12, and 13 define the term "independent contractor" and would advise the jury of the tests to be applied in determining whether that relationship existed. Requested instruction No. 14 would advise the jury that, if Clements was found to be an independent contractor, then Ketonen would not be liable, regardless of whether or not Clements had been negligent. No instructions along this line were given by the court, though there is a reference to the relationship of independent contractor in instruction No. 4.

Respondents do not question the form of these instructions, but justify the refusal to give them on the ground that there was no testimony upon which the jury could have based a finding that Clements was an independent contractor.

We do not concur in that view. The testimony of Ketonen, quoted above, and the evidence showing the general existing circumstances, were sufficient to support such a finding, had the jury been permitted to pass upon the question. Appellant was entitled to have his theory of the case submitted to the jury.

Had respondents predicated their case, at least in part, on the theory that appellant failed to exercise reasonable care in providing spectators with a safe place to view the

exhibition and pass to and from the exits, requested instruction No. 14 would have required some revision. Failure to establish a basis for imputing Clements' negligence to Ketonen would not then necessarily bar recovery, for Ketonen's own personal negligence would be in issue. See *Dusckiewicz v. Carter*, 115 Vt. 122, 52 A. (2d) 788. But respondents based their case solely on the doctrine of *respondeat superior*, and the question of whether appellant was negligent in failing to provide a safe place for spectators was not submitted to the jury.

The trial court therefore erred in failing to submit instructions covering the subject matter dealt with in requested instructions Nos. 11, 12, 13 and 14.

Appellant assigns error upon the failure of the trial court to give requested instruction No. 16. This requested instruction would have told the jury that respondents were not entitled to recover if the jury found contributory negligence on the part of Mrs. Langness.

No instruction on contributory negligence was submitted to the jury. Respondents argue that contributory negligence was not alleged in appellant's answer and there was no evidence received which would warrant the giving of such an instruction.

Respondents are in error in asserting that appellant's answer contains no allegations relative to contributory negligence. It is alleged in appellant's affirmative defense that any injuries sustained by Mrs. Langness were caused by her own negligence, which negligence consisted of "striking Skagway Clements with the heel of her shoe and entering the area of the ring at said wrestling exhibition."

It is true that, if the only basis of recovery against Clements and Ketonen was assault and battery, contributory negligence would not be a defense. *Ruter v. Foy*, 46 Iowa 132; *Hawks v. Slusher*, 55 Ore. 1, 104 Pac. 883; *Lambrecht v. Schreyer*, 129 Minn. 271, 152 N. W. 645; *White v. Levarn*, 93 Vt. 218, 108 Atl. 564, 11 A. L. R. 1219; *Perkins v. Nail*, 37 S. W. (2d) (Tex. Civ. App.) 211. But, as indicated above, evidence was here received, without objection, on the basis

of which the jury could find that the kick which injured Mrs. Langness was unintentional and hence not an assault.

The jury could have found that Mrs. Langness was negligent in walking too close to the wrestling ring, or in leaning over the apron of the ring, and that such negligence was a contributing cause of the injuries which she received. The trial court submitted to the jury the question of negligence, and we believe it should also have submitted the question of contributory negligence. The failure to give requested instruction No. 16 was therefore error.

Appellant also assigns error upon the failure to give requested instruction No. 7, and the giving of instructions Nos. 3, 6, 8 and 16.

We find no error with regard to the giving and refusal to give these instructions, at least with respect to any contention advanced on this appeal. However, on the new trial we believe it would be preferable if the words "the inference is strong," as used in instruction No. 3, were changed to "there is an inference."

The judgment is reversed, and the cause is remanded for a new trial.

ALL CONCUR.