[No. 36137.    En Banc.    July 3, 1963.]

E. P. TITUS et al., Respondents, v. TACOMA SMELTERMEN'S UNION LOCAL NO. 25, INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS et al., Appellants.*

* Reported in 383 P. (2d) 504.

*John Caughlan* (*Paul J. Braune*, of counsel), for appellants.

*Hugo Metzler, Jr.* and *Frank L. Cathersal*, for respondents.

HUNTER, J.—This is an appeal from a judgment for damages in favor of the plaintiffs (respondents), E. P. Titus and E. R. Faure, against the defendants (appellants), Tacoma Smeltermen's Union Local #25 and two of its officers and the International Union of Mine, Mill and Smelter Workers, the parent organization, and one international representative.

The plaintiffs were nonunion laboratory employees of the Tacoma plant of the American Smelting and Refining Company. They brought two causes of action against the defendants. The first cause of action was for the recovery of lost wages caused by the defendants' unlawful interference with the plaintiffs' employment contract consisting

of conduct on the part of the defendants which forced the Tacoma plant to discontinue operations. The second cause of action was for the recovery of lost wages caused by the defendants' unlawful interference with the plaintiffs' employment contract together with damages resulting from an assault by two members of the local union which occurred while the plaintiffs were attempting to cross a picket line to assume their employment duties.

The trial court awarded summary judgment against the defendants for the damages consisting of the plaintiffs' lost wages prayed for in both the first and second causes of action. Judgment for damages resulting from the assault alleged in the second cause of action was awarded upon a jury verdict in favor of the plaintiffs. This appeal followed.

The defendants assign error to the trial court's granting of the plaintiffs' motion for summary judgment in their first cause of action and its failing to grant the defendants' motion for a summary judgment dismissing this cause of action.

The plaintiffs' claim for damages in the first cause of action was based upon the following pertinent facts which they alleged in their complaint:

"VIII. Local #25 as collective bargaining representative and the Tacoma Plant as employer, entered into a collective bargaining Agreement dated June 29, 1956, hereinafter referred to as 'Agreement' covering the employees in the collective bargaining unit mentioned in Paragraph VI hereof, Article VIII, Subsection 'F') of said Agreement, provides in part as follows:

" 'There shall be no work stoppage nor a threat of the same on the part of an individual or a group, nor a lock-out on the part of the Company, while a grievance is in the course of being presented, investigated, considered or arbitrated. In the event of such stoppage, any investigation, consideration, or arbitration of a grievance will be automatically suspended until such stoppage is ended and employees have returned to work.'

"That the Tacoma Plant, at all times hereinafter mentioned, had fully complied with the terms and conditions contained in said Agreement.

"IX. Upon March 13, 1959, the Tacoma Plant was shut down by reason of the occurrence of a series of incidents commencing on February 1st and consisting of slow-downs, refusal to perform assigned duties, numerous work stoppages of short duration, and demonstration within the Plant on the part of employees in such collective bargaining unit, and on the part of Local #25. Such conduct was designed and intended by Local #25 and members of its bargaining unit to force the Tacoma Plant to discontinue operations. The plaintiffs are informed and believe that therefor alleged that the International, acting through its authorized representatives, agents and officers and in concert with Local #25, encouraged, ratified and assisted in such incidents for the sole purpose of compelling the Tacoma Plant to suspend operations.

"X. *The incidents referred to in paragraph IX hereof were occasioned by defendant's attempt to illegally coerce the management of the Tacoma Plant to resolve a settlement of a grievance in its favor contrary to the terms of Article VIII of the Agreement.* The United States District Court, Western District of Washington, Southern Division, determined the closure of the Tacoma Plant to be in violation of the Agreement and order the defendants to cease and desist from continuing or reinstigating any of the instances set forth in paragraph IX hereof; as more particularly appears from the files and records of the District Clerk's Office in Cause No. 2403. As a result of said decision, the Tacoma Plant resumed operation and its employees continued their work without further interference with employees by the defendants." (Italics ours.)

As to the defendants' liability for the unlawful interference with the plaintiffs' employment contracts, the plaintiffs' motion for summary judgment was supported only by the affidavit of Robert E. Shinkoskey, the manager of the Tacoma plant. The following constituted the part of Mr. Shinkoskey's affidavit pertinent to this issue:

"That heretofore and during the months of February and March, 1959, members of the Tacoma Smeltermen's Union, Local No. 25, engaged in a concerted effort, in that they refused to perform normal work loads, refused to perform assigned duties, created work stoppages of short duration and held demonstrations within the Plant; and, that as a result of such conduct, the Laboratory of the Tacoma Plant was unable to operate and closed from April 4, 1959,

to May 18, 1959, and was reopened by reason of an order made and entered, upon the application of the Tacoma Plant, by the Honorable Judge Boldt, sitting as Judge of the United States District Court, Western District of Washington, Southern Division, ordering the Tacoma Smeltermen's Union, Local No. 25, and the International Union of Mine, Mill and Smelter Workers, to cease and desist from continuing or instigating any of the instances set forth hereinabove."

The plaintiffs contend the breach of the defendants' collective bargaining contract with the Tacoma plant constituted, as a matter of law, illegal and unjustifiable interference with their contracts of employment.

The defendants contend the above pleadings and affidavit excerpts do not show an illegal interference with the plaintiffs' contracts but, on the contrary, show nothing more than a breach of an agreement between the union and the Tacoma plant to which the plaintiffs are not parties.

It is well-recognized that one may be liable for his interference with the contract relations of others unless such interference is justified. See Carpenter, *Interference With Contract Relations*, 41 Harv. L. Rev. 728; Restatement, Torts § 766. However, where one does not induce the promisor to break the contract nor acts for the purpose of such interference or with knowledge that such interference will result, but merely interferes with the contract in an incidental or indirect manner, no liability exists. See Carpenter, *supra*; Restatement, Torts § 766. As explained in Restatement, Torts § 766(d):

". . . The rule stated in this Section applies to any purposeful causation whether by inducement or otherwise. *The essential thing is the purpose to cause the result.* If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other. It is not necessary, however, that the purpose to cause the breach of contract or failure to deal be the actor's sole or paramount purpose. It is sufficient that he designs this result whether because he desires it as an end in itself or because he regards it as a necessary, even

if regrettable, means to some other end . . ." (Italics ours.)

We fail to find any statement in the plaintiffs' pleadings or supporting affidavit indicating the defendants acted for the purpose of terminating or interfering with the plaintiffs' employment contracts. There is no evidence that the defendants' conduct was for any purpose other than to obtain a favorable disposition of its grievances with the Tacoma plant. Allegation No. X of the plaintiffs is consistent with this finding:

"The incidents referred to in Paragraph IX hereof, were occasioned by said defendants' attempt to illegally coerce the management of the Tacoma Plant to resolve a settlement of a grievance in its favor, contrary to the terms of Article VIII of the Agreement. . . ."

We agree with the defendants. At most, the plaintiffs have shown a breach of contract between the union and the Tacoma plant. The plaintiffs were not intended to be a beneficiary of this contract and therefore may not hold the defendants liable for damages resulting from its breach. *Pacific Mercantile Agency v. First Nat. Bank,* 187 Wash. 149, 60 P. (2d) 6 (1936).

Because of our disposition of this cause of action, as discussed above, we need not consider the plaintiffs' contentions that the defendants' conduct was illegal nor their citation to *American Smelting & Refining Co. v. Tacoma Smeltermen's Union,* 175 F. Supp. 750 (W. D. Washington, S. D. 1959), in support of it.

The plaintiffs' motion for a summary judgment in the first cause of action should have been denied and the defendants' motion for dismissal of the first cause of action by summary judgment should have been granted.

In regard to the second cause of action, the defendants assign numerous errors to the trial court's rulings in denying the introduction of evidence and in rejecting the defendants' proposed instructions on the question of agency.

In the plaintiffs' second cause of action there is substantial evidence in the record to justify the jury in con-

cluding that, in order to compel the Tacoma plant to comply with its employees' demands for increased wages and benefits, a picket line was established at the entrance of the smelter from August 21, 1959 to December 11, 1959, at the instance and direction of the local union No. 25 and the International; that it was maintained by members of the local union; that a purpose of the picket line was to prevent employees from working in the smelter, although certain employees were permitted to cross the picket line for the purpose of maintaining, caring for, and protecting the smelter and its operating equipment; that on the morning of September 1, 1959, the plaintiffs attempted to enter the smelter for the purpose of pursuing their employment; that the plaintiffs exhibited their passes received from the management; that they were denied entrance and were physically assaulted by two members of the local union who were in the picket line; and that they were called "finks" and "scabs" and were prevented from entering the smelter's premises.

The issue to be resolved from these facts is whether the defendant unions can be held liable for the unlawful acts of these members when there is no evidence of specific authorization or ratification of such conduct by them.

The defendants contend they cannot be held liable for the specific acts of the local members in assaulting the plaintiffs unless it is established by clear proof that these specific acts were authorized or ratified by the defendant unions. They rely on RCW 49.32.070, which states:

"No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the state of Washington for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof."

The application of RCW 49.32.070 in the area of tort liability is a case of first impression in this state. Our research has revealed no cases from other jurisdictions which

support the application of the statute to this area of liability, and we are of the opinion that, in construing RCW 49.32.070, it is inapplicable.

It is obvious that, if RCW 49.32.070 was the applicable rule in the instant case, the general rules of agency in determining tort liability would be severely restricted. We do not believe this to be the intent of the statute. It is to be noted that the title of the act, from which RCW Chapter 49.32 was codified, reads as follows:

"An Act relating to labor, and labor disputes, defining and limiting the powers of the courts of this state in the *granting of restraining orders and injunctions* in cases involving or growing out of any labor dispute, and in the *trial and punishment for contempt for violation thereof,* declaring the public policy of the State of Washington with respect thereto and with respect to contracts of employment and hiring, and repealing all acts and parts of acts in conflict therewith." (Italics ours.)

RCW 49.32.070 is found within RCW Chapter 49.32, which deals with the enjoining of conduct which is involved in a labor dispute; there is no reference to the control of or application to any other field of law. RCW 49.32.070 must be read in this context and, in so doing, the only logical conclusion which can be drawn is that it is a limitation on the courts of this state in cases involving labor restraining orders and injunctions only and does not extend itself to the area of tort liability.

The defendants have relied on *United Brotherhood of Carpenters & Joiners of America v. United States,* 330 U. S. 395, 67 S. Ct. 775, 91 L. Ed. 973 (1947), in support of their contention that RCW 49.32.070 restricts the general rules of agency. That case involved § 6 of the Norris-La Guardia Act, 47 Stat. 70, 71, 29 U.S.C.A. 106, which is virtually identical to RCW 49.32.070, but it is not in point with the instant case as it involved solely the question of whether § 6 was applicable to a criminal violation of the Sherman Act. The court in that case did not touch upon the question whether the section applied to the area of tort liability. The scope of that opinion is summed up by the court's quo-

tation from the Senate Committee on the Judiciary in regard to § 6:

" 'But the argument is made that a man is held legally responsible for the acts of his agents taken in due course of employment. This argument is evidently based upon a doctrine of the civil law of negligence. It has no application to the criminal law. . . .' "

We agree with the plaintiffs that the general rules of agency law should be applied in this case. It is the general rule that a master may be held liable for the tortious acts of his servant, although he may not know or approve of them, if such acts are done within the scope of the employment, Restatement, Agency (2d) § 219; *Westerland v. Argonaut Grill*, 185 Wash. 411, 55 P. (2d) 819 (1936). Although it has been a troublesome problem for other jurisdictions to determine whether a master should be liable for an assault committed by his servant, we are not here faced with this problem inasmuch as we have previously permitted an assaulted person to recover damages when the assault occurred in the furtherance of the master's business and within the scope of the servant's employment. *Langness v. Ketonen*, 42 Wn. (2d) 394, 255 P. (2d) 551 (1953); *Westerland v. Argonaut Grill, supra*. Consistent with this general rule of agency and as we have followed in the *Langness* and *Westerland* cases, we hold that a union may be liable for assaults committed by its members while picketing, providing it is done in the furtherance of the union's business and within the scope of the employment. See, *United Brotherhood of Carpenters & Joiners of America, AFL-CIO v. Humphreys*, 203 Va. 781, 127 S. E. (2d) 98 (1962); *International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, C.I.O. v. Russell*, 264 Ala. 456, 88 So. (2d) 175, 62 A. L. R. (2d) 669 (1956); *Hall v. Walters*, 226 S. C. 430, 85 S. E. (2d) 729 (1955).

Pursuant to the above rule, it was not error for the trial court to deny the introduction of evidence by the defendants which dealt with specific authorization or ratification

since these facts are immaterial to liability. Nor was it error to refuse defendants' proposed agency instructions which were based upon RCW 49.32.070, *supra*.

■ The defendants contend that their proposed instruction No. 25 should have been given advising the jury that no damages for loss of face or prestige and humiliation may be considered which resulted from the denial of the plaintiffs' right to work. Reading the instructions as a whole, it is clear that the damages submitted for the jury's consideration were limited to those resulting from the assault. The defendants' contention is therefore without merit since their proposed instruction No. 25 was otherwise covered in the instructions given.

The defendants assign error to the failure of the court to give their proposed instruction No. 26, advising the jury not to consider loss of wages for any part of the damages awarded. This assignment is likewise without merit since the issue of damages for loss of wages was not an issue in the case before the jury and was not contained in the elements of damages which the jury was directed to consider in the damage instruction given.

The defendants also assign error to instruction No. 10, on the issue of damages. As no other section was excepted to before the trial court, the only issue properly before us on this assignment of error relates to § (e) of instruction No. 10, which states:

"In assessing any damages for plaintiffs, if you find either of them have sustained any, you should consider such elements, if proven, as follows: . . . (e) the mental suffering of plaintiffs resulting from the disturbing influence upon members of plaintiffs' respective families; . . ."

The defendants contend § (e) is an improper element of damages. We disagree.

■ The plaintiffs are entitled only to those damages consisting of their mental suffering which is the natural and probable consequence of the assault committed by the defendants. Whether the plaintiffs endured mental suffering over the disturbing influence caused to their families

as a natural and probable consequence of the wrongful assault on the plaintiffs is a matter of proof. The compensable damage is for the mental distress to the plaintiffs, not to the members of their families. In *Fink v. Dixon*, 46 Wn. (2d) 794, 285 P. (2d) 557 (1955), where a pregnant mother was physically injured, we held that her mental anxiety over injuries to herself *and to her unborn child* was a proper element of damages because the compensation was for the personal anxiety of the mother and did not encompass recovery for prenatal injuries to the unborn child. Likewise, the claimed injury here is not for the disturbing influences to the members of the families, but for the mental distress endured by the plaintiffs.

■ Whether there is sufficient evidence to support the giving of § (e) of instruction No. 10 need not be determined as no exception to the instruction on this basis was taken before the trial court. *Miller v. Staton*, 58 Wn. (2d) 879, 365 P. (2d) 333 (1961).

The defendants assign error to the trial court's overruling of their objection to the hypothetical question in the following examination by the plaintiffs' counsel of one Olsen, an adverse witness:

" . . . Mr. Olsen, do you know what the policy of the International Union is concerning the conduct of work stoppages by the various Locals in August and September of 1959? A . . . they don't set the policy. . . . the locals . . . have their own policies, in such a situation. Q So, hypothetically, then, making this assumption, if firearms were used on the picket line, this would not be contrary with the policy of the International, so far as you know? . . . Mr. Caughlan: I object to it as being an argumentative question. The Court: Objection overruled. Q Would you answer the question, please? A All I can say is, I presume they would be contrary to the whole policy."

Assuming the question to be argumentative and unnecessary to the examination of this witness, we do not believe this constituted prejudicial error in view of the witness' denial of the inference posed by the question.

■ The defendants contend the trial court erred in granting the plaintiffs' motion for summary judgment for

loss of wages resulting from the tortious interference with their employment contract during the period the picket line was maintained. The plaintiffs filed affidavits in support of their motion which stated that employment was available. The defendants, on the other hand, filed counter-affidavits denying that work was available to the plaintiffs on the basis that the names of the plaintiffs were not on the list furnished by the Tacoma plant indicating those persons for whom work was available. This raised a genuine issue of fact as to the existence or amount of work available to the plaintiffs during the strike and was a question for the jury. Therefore, the trial court erred in granting the plaintiffs' motion for summary judgment for the plaintiffs' loss of wages in the second cause of action.

We hold:

1. The summary judgment in favor of the plaintiffs in the first cause of action is reversed, and the cause is remanded with directions that the first cause of action be dismissed.

2. The judgment entered on the jury verdict in favor of the plaintiffs in the second cause of action is affirmed.

3. The summary judgment in the second cause of action for damages for loss of wages in favor of the plaintiffs is reversed and remanded for trial on this issue.

4. Both parties having prevailed, they will bear their own costs on this appeal.

It is so ordered.

OTT, C. J., HILL, DONWORTH, FINLEY, WEAVER, HAMILTON, and HALE, JJ., concur.

November 6, 1963. Petition for rehearing denied.