[No. 5575-1.   Division One.   September 18, 1978.]

BURKE & THOMAS, INC., ET AL, *Appellants,* v.
INTERNATIONAL ORGANIZATION OF MASTERS,
MATES & PILOTS, ET AL,
*Respondents.*

*Kargianis & Austin,* by *George Kargianis,* for appellants.

*Reaugh, Hart, Allison, Prescott & Davis,* by *Keith R. Baldwin,* for respondents.

FARRIS, C.J.—A group of San Juan Island resort owners and operators filed what purported to be a class action suit on behalf of themselves and other residents of the San Juan Islands. The complaint alleged that plaintiffs suffered inconvenience and monetary damage as a result of defendant union's strike of the Washington State Ferry System on Labor Day weekend of 1976. The plaintiffs prayed for (1) a "declaration of rights," (2) an order declaring this to be a class action, (3) damages in excess of $1,000,000, (4) attorney's fees and costs, and (5) such further relief as is "just and equitable." Defendant International Organization of Masters, Mates and Pilots (the union) moved for summary judgment of dismissal on the basis that plaintiffs had failed to state a claim upon which relief could be granted. The court granted the motion and plaintiffs appeal.

On appeal, both parties assume that the trial court's action should be treated as a dismissal for failure to state a claim upon which relief could be granted. In dismissing plaintiffs' complaint, however, the trial court considered matters outside the pleadings, and thus the motion is to be treated as one for summary judgment under CR 12(c). A motion for summary judgment may be granted only if there is no genuine issue as to any material fact, CR 56(c), and the court must consider all facts submitted in the light most favorable to the nonmoving party. *Highline School Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 15, 548 P.2d 1085 (1976).

Viewed most favorably to plaintiffs, the facts are as follows: Plaintiffs are resort owners and operators who conduct their businesses and reside in the San Juan Islands.

Plaintiffs rely almost exclusively on Washington State ferries for transportation of themselves and their tourist customers to and from the islands. A large portion of resort–owner plaintiffs' income is a product of tourism, and 20 to 25 percent of the total tourism income is realized over the Labor Day weekend.

During the course of continuing negotiations between the union and the Washington State Ferry System, members of the union, who normally operate vessels of the Washington State Ferry System, walked off the job at 11:30 p.m. on Thursday, September 2, 1976, immediately prior to the Labor Day holiday. All Washington State ferries, including those servicing the San Juan Islands, were rendered inoperative for the remainder of the weekend. The strike by the union was in violation of Rule 19 of the negotiating parties' collective bargaining agreement and was violative of a temporary restraining order entered in King County Superior Court on September 3, 1976.

As a result of the union's strike, the plaintiffs lost substantial income which they would have received had the normal Labor Day tourism not been halted. The plaintiffs lost many perishable goods which had been stocked in anticipation of Labor Day traffic, employees were laid off, and many residents' lives were disrupted.

The only issue raised is whether, under these facts, a cause of action exists by means of which plaintiffs may recover damages from the union. Plaintiffs' complaint does not state a specific basis for recovery but alleges that plaintiffs suffered severe inconvenience, disruption and interference with their daily lives, as well as economic disruption and monetary damage as a result of the union's action. On appeal, plaintiffs argue that they are entitled to recover on either of two theories: (1) the union's tortious interference with plaintiffs' business relationships and (2) as third–party beneficiaries of the collective bargaining agreement entered into by the Washington State Ferry System and the union. We hold that plaintiffs failed to state a cause of action under either theory.

■■■ The elements of a cause of action for tortious interference with a business expectancy are: (1) the existence of a valid contractual relationship or business expectancy, (2) knowledge of the relationship by the interferor, (3) intentional interference inducing or causing termination of the relationship or expectancy, and (4) resulting damage. *Calbom v. Knudtzon,* 65 Wn.2d 157, 162–63, 396 P.2d 148 (1964); *Island Air, Inc. v. LaBar,* 18 Wn. App. 129, 139, 566 P.2d 972 (1977). Where, however, one does not act for the purpose of interference with a business relationship or with knowledge that such interference will result, but merely interferes with a business relationship in an incidental or indirect manner, no liability exists. *Titus v. Smeltermen's Union Local 25,* 62 Wn.2d 461, 465, 383 P.2d 504 (1963). As explained in Restatement of Torts § 766(d) (1939), at 55:

> The rule stated in this Section applies to any purposeful causation whether by inducement or otherwise. The essential thing is the purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other.

*See also Jamur Prods. Corp. v. Quill,* 51 Misc. 2d 501, 273 N.Y.S.2d 348 (1966). There suits were filed by numerous corporate and individual plaintiffs against unions involved in a New York City transit strike. In holding that the plaintiffs failed to state a cause of action for tortious interference with business relations, the court stated:

> Plaintiffs must be denied recovery on this theory because it is evident that the strike was not aimed at each as apart from the public generally.
>
> At the same time the damages sued for are too remote and too indirect. In a proceeding arising out of alleged wrongful acts by public employers or employees (absent specific statutory authority empowering such an action), the plaintiff must show damages incurred by himself different in character from those sustained by the public generally (31 A.L.R.2d 1142, 1176; *Slavin v. McGuire,* 205 N.Y. 84). The injuries sustained by plaintiffs are no different in kind or quality from those sustained by

everyone affected by the strike. The intentional nature of the tort herein, it may be argued, was directed against everyone. But in actuality, it was directed against no one in particular, except the employer, who does not sue herein.

*Jamur Prods. Corp. v. Quill, supra* at 508–09.

█ Neither the pleadings nor affidavits state facts which would support a finding that the union acted for the purpose of interfering with plaintiffs' business relationships, nor is there any indication that the strike was directed at anyone other than the employer or the public at large. All strikes have the potential to affect the public, but there is no evidence here that the purpose of the strike was other than to further the union's bargaining position in negotiations with the Washington State Ferry System. Any harm to plaintiffs was incidental to the purpose of the strike.

█ Neither can plaintiffs recover as third–party beneficiaries of the collective bargaining agreement. Even if we assume that the union breached the "no strike" clause of its collective bargaining agreement with the State, plaintiffs were not intended to be beneficiaries of the agreement and therefore may not hold the union liable for damages resulting from its breach. *Titus v. Smeltermen's Union Local 25, supra.* In *McDonald Constr. Co. v. Murray,* 5 Wn. App. 68, 70–71, 485 P.2d 626 (1971), *quoting American Pipe & Constr. Co. v. Harbor Constr. Co.,* 51 Wn.2d 258, 266, 317 P.2d 521 (1957), the court stated:

> In regard to the requisite intent, in *Vikingstad v. Baggott,* 46 Wn. (2d) 494, 282 P. (2d) 824, we recognized the rule stated in 81 A.L.R. 1271, 1287, that such "intent" is not a desire or purpose to confer a benefit upon the third person, nor a desire to advance his interests, but an intent that the promisor shall assume a direct obligation to him.

Plaintiffs were not intended to be beneficiaries of the collective bargaining agreement, as the union did not assume a direct obligation to them.

Affirmed.

CALLOW and RINGOLD, JJ., concur.

Reconsideration denied November 16, 1978.

Review granted by Supreme Court March 16, 1979.