[Civ. No. 2594.   Fourth Dist.   July 18, 1941.]

LLOYD D. CHRISMAN et al., Respondents, v. CULINARY WORKERS' LOCAL No. 62 (an Unincorporated Association) et al., Appellants.

130

Clarence E. Todd, B. M. Benson and Glenn M. DeVore for Appellants.

Strother P. Walton for Respondents.

MARKS, J.—This in an appeal from a judgment which enjoined defendants from maintaining a picket around the premises of plaintiffs. In fairness to all parties it should be observed that the complaint was filed on August 15, 1937; the cause was tried on October 18, 1937, and the judgment was filed on February 24, 1938, over two years before the decisions by the Supreme Court of the six cases we will hereafter cite.

It is alleged in the complaint that Culinary Workers' Local Union No. 62 (hereafter referred to as the Union), was an unincorporated labor union composed of cooks, waiters and other culinary workers in and about the city of Fresno; that George Rollis was the president, Helen L. Mallory the secretary, and Jack R. Racovich the business agent of the Union.

It is alleged and not denied that for thirteen years plaintiffs had owned and operated a drug store and soda fountain at 2448 Stanislaus Street, in the city of Fresno, under the name of "Chrisman's Pharmacy"; that since September 26, 1936, they also owned and operated a restaurant and soda fountain at 1035 Olive Avenue, in the city of Fresno, under the name of "Chrisman's Drive-In Restaurant and Soda Fountain"; that in the operation of these businesses they regularly employed not less than thirty-six persons.

It is further alleged that for several months prior to May, 1937, the Union, through its officers and agents, tried to get

the plaintiffs to execute a contract with the Union whereby plaintiffs would be bound by union rules in the operation of their two places of business, and, in the event of the refusal of plaintiffs to sign the contract, threatened to take such retaliatory measures as would render such businesses unprofitable; that plaintiffs refused to sign the contract; that as a result defendants have continuously employed pickets to picket the two places of business; that the pickets walk up and down the sidewalks adjoining the premises displaying special editions of the Tri-County Labor News which are not offered for sale; that the papers carry large headlines reading "Chrisman's Unfair"; that the picket is maintained daily at the Olive Street place from five to nine o'clock each afternoon by between three and thirty-five pickets; that the pickets shout the headlines of the paper in such loud tones of voice that they can be heard several hundred feet, disturbing the quiet of the neighborhood and giving the impression that fights and brawls are in progress so that prospective patrons have avoided and refused to enter the places of business; that the pickets frequently leave the sidewalks and trespass upon the property of plaintiffs although requested not to do so; that they look through the windows and thus annoy and harass the patrons; that the Olive Street place has a parking space on the plaintiffs' property which is reached by driveways from the abutting streets; that the pickets make a practice of standing in the driveways, thus obstructing them, making it difficult for patrons to use them; that all of these practices have been done and carried on continuously and constantly since May 15, 1937.

It is further alleged that none of the employees of plaintiffs are members of the Union and that they do not desire to become such members nor do they desire plaintiffs to execute the contract with the Union; that there is no controversy of any kind between plaintiffs and their employees; that the acts of defendants have seriously damaged plaintiffs in their businesses.

Thirty-nine of the plaintiffs' employees, being all of them at that time, filed a complaint in intervention wherein they joined with plaintiffs in seeking to have the picket enjoined. Their pleadings follow closely the allegations of the complaint, with additions to the effect that the interpleaders do not desire to have the Chrismans sign the union contract as such contract will compel their discharge from their employment.

Defendants admitted their maintenance of the picket but denied all acts coming without the usual definition of peaceful picketing.

A brief trial was had. The trial court found all facts in favor of plaintiffs and in accordance with those facts which we have outlined, and enjoined the picket. This appeal followed.

It is now settled in California that *peaceful* picketing is lawful and may not be enjoined even though there is no dispute over conditions of employment between an employer and his employees. (*Lisse* v. *Local Union No. 31,* 2 Cal. (2d) 312 [41 Pac. (2d) 314]; *McKay* v. *Retail Automobile Salesmen's Local Union No. 1067,* 16 Cal. (2d) 311 [106 Pac. (2d) 373]; *Fortenbury* v. *Superior Court,* 16 Cal. (2d) 405 [106 Pac. (2d) 411]; *Lund* v. *Auto Mechanics' Union No. 1414,* 16 Cal. (2d) 374 [106 Pac. (2d) 408]; *E. H. Renzel Co.* v. *Warehousemen's Union I. L. A. 38–44,* 16 Cal. (2d) 369 [106 Pac. (2d) 1]; *Shafer* v. *Registered Pharmacists' Union Local No. 1172,* 16 Cal. (2d) 379 [106 Pac. (2d) 403]; *C. S. Smith Metropolitan Market Co.* v. *Lyons,* 16 Cal. (2d) 389 [106 Pac. (2d) 414]; *In re Lyons,* 27 Cal. App. (2d) 293 [81 Pac. (2d) 190].)

It is equally well settled by these cases and the many others relied upon to support the conclusions there reached, that picketing which is *not peaceful* is unlawful and may be enjoined.

It would be of no particular value to anyone to review here the long opinions filed in the cases just cited. They establish the interpretation of the law on peaceful picketing in California which must be followed by all inferior courts. Only the Supreme Court can modify such interpretation unless the legislature acts. Therefore, the task presented here is to apply those rules, as we understand them, to the facts of the instant case.

The right to picket peacefully is said to find its support in the right of free speech which is but one of the constitutional personal liberties guaranteed in the Bill of Rights. The courts have very generally placed freedom of worship and freedom of speech at the head of the list of these civil liberties and perhaps rightly so. However, none of those liberties is absolute in itself. Each must be measured by the public welfare and must be limited by it. These constitu-

tional guarantees of personal liberties must be correlated if any are to live, for if one becomes predominant it will destroy the others and the one will then be consumed by fire generated by its own power.

■ It is clear that the judgment in this case is too broad and enjoins acts that are now regarded as lawful. There are but three classes of acts alleged and found that now may be enjoined. We will devote our attention to them.

It is alleged and found that the pickets shouted in unison in a loud and boisterous manner and disturbed the peace and quiet of the neighborhood and thereby interfered with plaintiffs' peaceful enjoyment of their properties. Such conduct is unlawful. (28 Am. Jur. 339; sec. 415, Penal Code.) There is evidence supporting this finding.

Ever since the famous church bells case in England, the courts of that country and of the United States have protected, by injunction, the right of a property owner to the quiet and peaceful enjoyment of his property free from the unlawful invasion of that right by another. Defendants must exercise their right of free speech in such a manner that they will not invade the right of plaintiffs to the quiet and peaceful enjoyment of their properties. Their acts invading these rights may be and were rightly enjoined.

■ It is alleged, and the trial court found, that the pickets gathered upon and obstructed the driveways leading into plaintiffs' Olive Street property and interfered with the right of ingress and egress of patrons. The pickets had no lawful right to do this, for, as said by the Supreme Court in *Lisse* v. *Local Union No. 31, supra,* at page 321, "If it appears that the object of the picketing is to interfere with those passing in or out by other than persuasive means, it is illegal; but that if the design of the picketing is to see who can be the subject of persuasive inducement, such picketing is legal . . . "

■ The only evidence in the record tending to support the finding of obstruction of the driveways is the following in the testimony of Mr. Chrisman:

"We have two entrances, one on Olive Avenue and one on our own property. These entrances are places possible for customers to walk in to get into the place of business. Besides, we have entrances where they drive in. I have alleged in my complaint that the pickets from time to time walked across the sidewalk in a way as to interfere with persons driving in."

This evidence is not sufficient to support the finding that the pickets obstructed the free use of the driveways so this portion of the injunction cannot be sustained.

■ It is alleged and found that the pickets frequently trespassed on plaintiffs' property, looked through the windows of the restaurant and annoyed and harassed the guests. Plaintiffs are entitled to the quiet and peaceful enjoyment and use of their property. If the alleged acts interfered with this right and caused them injury, they may be enjoined. (*Gilly* v. *Hirsh*, 122 La. 966 [48 So. 422, 20 L. R. A. (N. S.) 972].)

The only evidence supporting the finding is in the following testimony of Mr. Chrisman: "They (the pickets) would step over on to my property, and if the people were sitting on my property in their cars getting orders filled for food and milk shakes, the pickets would come over and talk to them in loud voices." There is no evidence concerning the pickets looking through the windows of the restaurant and harassing the guests, which was found, so the evidence offered does not support the finding.

As many acts are enjoined which must now be regarded as lawful, and as portions of the judgment which enjoin unlawful acts are not supported by any sufficient evidence, the judgment may not be supported here. Plaintiffs should be permitted to file an amended complaint if they desire to do so.

The judgment is reversed and the case is remanded for a new trial.

Barnard, P. J., and Griffin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 13, 1941.