[Civ. No. 29574. Second Dist., Div. Two. Nov. 3, 1965.]

AMERICAN RADIO ASSOCIATION, AFL-CIO, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; M.G.R.S., INC., Real Party in Interest.

Darwin, Rosenthal & Leff, Jay A. Darwin and Joel Goldfarb for Petitioner.

No appearance for Respondent.

Cagle & Garcelon and Alfred G. Cagle for Real Party in Interest.

FLEMING, J.—American Radio Association, AFL-CIO, seeks to prohibit the superior court from enforcing a preliminary injunction against picketing and from further proceeding in an action for injunctive relief.

The employer, M.G.R.S., Inc., operates the *S.S. Catalina* between Wilmington, California, and Santa Catalina Island each year from May 1 to September 30. The union, as representative of the ship's radio operator, had a collective bargaining agreement with the employer. This agreement expired on December 31, 1964, and the employer refused to renew it, relying on a change in Federal Communications Commission regulations which made a separate radio operator unnecessary. The union notified the employer it was on strike and began to picket the employer's premises on April 27, 1965, four days before the steamship was to begin operations. The employer sought injunctive relief against the union in the superior court on the ground that the picketing was illegal, and on May 18, 1965, obtained a preliminary injunction against the picketing. The union then petitioned this court for a writ of prohibition and also filed a complaint of unfair labor practices with the National Labor Relations Board.

In support of its petition to vacate the preliminary injunction, the union originally contended: (1) exclusive jurisdiction over the labor dispute rested with the National Labor Relations Board, and (2), regardless of jurisdiction, the superior court should not have enjoined picketing whose means and objects were lawful.

1. After we issued our alternative writ, the union advised us by letter that it was abandoning its contention of exclusive jurisdiction in the National Labor Relations Board and had dismissed its complaint before the board.

■ The union, of course, cannot confer jurisdiction on a state court by merely withdrawing a complaint pending before a federal agency. But the superior court is a court of general jurisdiction over all controversies whose resolution is not specifically and exclusively committed elsewhere. (Cal. Const., art. VI, § 5.) ■ The exclusive jurisdiction of the National Labor Relations Board is limited to activities affecting interstate commerce. (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88,* 53 Cal.2d 455, 458 [2 Cal.Rptr. 470, 349 P.2d 76].) ■ No facts are disclosed in the pleadings, affidavits, or testimony which would indicate that the ship's operations affect interstate commerce. (*International Longshoremen & Warehousemen's Union,* 124 N.L.R.B. 813.) As stated in *Retail Clerks' Union* v. *Superior Court,* 52 Cal.2d 222, 226 [339 P.2d 839] cert. den. 361 U.S. 864 [80 S.Ct. 120, 4 L.Ed.2d 105] (overruled on other grounds, *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88,* 53 Cal.2d 455, 474-475 [2 Cal.Rptr. 470, 349 P.2d 76]) : ''We are not prepared to hold that the allegations of bare conclusions of law as to jurisdiction establish any facts as to the effect of any alleged labor practice upon interstate commerce [citations] ; rather, we agree with the superior court that in the present state of the record there is an unresolved 'factual question' (in addition to questions of law) upon which determination of its jurisdiction may eventually depend.'' (See also, *Thorman* v. *International Alliance. etc. Employees,* 49 Cal.2d 629, 632-633 [320 P.2d 494].) The record in its present state fails to show that the superior court lacked jurisdiction over the dispute.

2. The second issue is whether the picketing was properly restrained under state law. The parties stipulated that the picketing was peaceful. The union relies on its fundamental right of free speech and its right to picket to achieve a legitimate labor objective. Our inquiry is whether this picketing was in furtherance of a legitimate labor objective.

The evidence and declarations show that the *S.S. Catalina* relies for communications on radio-telephone equipment and carries no radio-telegraph equipment using Morse code. Recently it has eliminated ship-to-shore passenger calls at the behest of the Federal Communications Commission and has

discontinued a separate radio room for reasons of economy. It moved its radio-telephone equipment from the radio room to the bridge of the ship, where the equipment is no longer operated by a separate radio operator but operated by the captain and his deck officers. However, it appears that Federal Communications Commission regulations still require a "licensed radio operator" for radio-telephone operation; and the evidence shows that the captain and his deck officers are now licensed to operate radio-telephone equipment. ■ Paragraph 2 of the expired collective bargaining agreement defines the term "radio officer" to include "any person employed who operates . . . Radiotelephone . . . or any other electric device for communications . . . on board any vessel owned by the Company." We think the operation of the radio-telephone by the ship's officers falls within the scope of this paragraph. The purpose of the picketing, therefore, was to publicize the union's complaint that the employer was no longer employing a member of its union to operate its radio equipment, and to attempt to persuade the employer to resume the employment of a member radio operator under a new labor agreement.

Since the decision in *James* v. *Marinship Corp.*, 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], it has been the rule in California that a union cannot be enjoined from concerted activity whose object is reasonably related to a legitimate interest of labor and whose means are lawful. (*Hughes* v. *Superior Court*, 32 Cal.2d 850, 854 [198 P.2d 885], affd. 339 U.S. 460 [70 S.Ct. 718, 94 L.Ed. 985].) ■ Courts may not intervene to terminate labor disputes over employment relationships, even though the labor union does not represent any of the employees directly involved (*Messner* v. *Journeymen Barbers etc. International Union*, 53 Cal.2d 873 [4 Cal.Rptr. 179, 351 P.2d 347]); "though there is no dispute over conditions of employment between an employer and his employees" (*Chrisman* v. *Culinary Workers' Local*, 46 Cal.App.2d 129, 132 [115 P.2d 553]); "though nonemployees participate or even alone cause the dispute" (*C.S. Smith Met. Market Co.* v. *Lyons*, 16 Cal.2d 389, 397 [106 P.2d 414]). ■ "The members of a labor organization may have a substantial interest in the employment relations of an employer although none of them is or ever has been employed by him. The reason for this is that the employment relations of every employer affect the working conditions and bargaining power of employees throughout the industry in which he competes."

(*C.S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389, 401 [106 P.2d 414].) ▪ ''The right to inform the public concerning and to discuss the asserted virtues and faults of employers, of working conditions, and of union objects, and the advantages and disadvantages of membership in any particular union, is protected as an incident of free speech and free assembly.'' (*In re Porterfield,* 28 Cal.2d 91, 105 [168 P.2d 706, 167 A.L.R. 675].)

▪ Although no state law specifically imposes upon an employer an affirmative duty to bargain with employees, section 923 of the Labor Code declares a public policy in favor of the collective bargaining process.[1] (*In re Porterfield,* 28 Cal.2d 91, 119 [168 P.2d 706, 167 A.L.R. 675]; *C.S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389, 400 [106 P.2d 414].) This declared policy would be meaningless if the employer were relieved of all inducement to negotiate. ▪ The fundamental right of an employer to dispense with an employee's services (absent a contractual obligation) has long been recognized (see *Southern Cal. Iron & Steel Co.* v. *Amalgamated Assn.,* 186 Cal. 604, 607, 611-612 [200 P. 1]), but the exercise of this right is subject to modification through peaceful economic pressure by labor organizations seeking such legitimate ends as improved terms and conditions of employment, collective bargaining agreements, and the union or closed shop. (*McKay* v. *Retail Auto. S.L. Union No. 1067,* 16 Cal.2d 311, 326-327 [106 P.2d 373]; *C. S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389 [106 P.2d 414]; *Bautista* v. *Jones,* 25 Cal.2d 746, 749 [155 P.2d 343].) While an employer is under no legal duty to negotiate, his refusal to do so may be met by appropriate concerted action on the part of the union. (*Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88,* 53 Cal.2d 455, 469, 471 [2 Cal.Rptr. 470, 349 P.2d 76].)

---

[1] Labor Code, section 923: ''In the interpretation and application of this chapter, the public policy of this State is declared as follows:

''Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.''

In *Fibreboard Paper Products Corp.* v. *National Labor Relations Board,* 379 U.S. 203 [85 S.Ct. 398, 13 L.Ed.2d 233], the employer decided to contract out, for economic reasons, maintenance work which his own employees had been performing. The employer advised the union representing these employees that negotiations for a new agreement would be pointless, since in the future it would have no employees in the bargaining unit covered by the existing contract. On the expiration of the collective bargaining agreement, the maintenance employees were discharged, and the employees of the independent contractor took over. The court held the employer could not unilaterally decide to replace employees in a bargaining unit with those of an independent contractor; that the "contracting out" of such work was a subject for mandatory bargaining; that the employer's refusal to bargain was a violation of section 8 of the National Labor Relations Act, which requires an employer to "confer in good faith with respect to wages, hours, and other terms and conditions of employment."

The *Fibreboard* case involved federal law in a hearing before the National Labor Relations Board, but the language and policy of section 923 and other sections of our Labor Code are similar to that of the National Labor Relations Act (29 U.S.C.A. § 151 et seq.), and federal decisions in the field of labor-management relations are persuasive. (See *Petri Cleaners, Inc.* v. *Automotive Employees etc. Local No. 88,* 53 Cal.2d 455, 459-460 [2 Cal.Rptr. 470, 349 P.2d 76]; *Bricklayers & Masons Union No. 1* v. *Superior Court,* 216 Cal. App.2d 578, 586 [31 Cal.Rptr. 115].)

We conclude that picketing by the union to maintain employment for its members is a legitimate objective of the union and is protected by the right of free speech. (*Messner* v. *Journeymen Barbers, etc. International Union,* 53 Cal. 2d 873, 877-879 [4 Cal.Rptr. 179, 351 P.2d 347]; *C. S. Smith Met. Market Co.* v. *Lyons,* 16 Cal.2d 389 [106 P.2d 414].) The courts normally remain neutral in the struggle between an employer seeking to reduce existing employment and his employees seeking to maintain it. "[T]he principle or rationale involved is that a court should not use its coercive implements to aid one party in an economic struggle in which the other party has a substantial interest at stake and is employing means which are not in themselves unlawful." (*McKay* v. *Retail Auto. S.L. Union No. 1067,* 16 Cal.2d 311, 326 [106 P.2d 373]; *Messner*

v. *Journeymen Barbers etc. International Union,* 53 Cal.2d 873, 879-880 [4 Cal.Rptr. 179, 351 P.2d 347].)

 We do not, however, direct our writ against all further proceedings in the superior court but only against the injunction banning all picketing. It is possible that the picketing might have been unlawful in a manner not presently reflected in the record and that an injunction limited to unlawful aspects of picketing might be appropriate. *Magill Bros.* v. *Building Service etc. Union,* 20 Cal.2d 506, 508 [127 P.2d 542], held ''that untruthful picketing [was] unlawful picketing.'' Here, the employer alleged in its complaint that the picket signs were not truthful in that they stated the passengers' safety was being jeopardized by elimination of the radio operator. This is a matter to be resolved by the trial court after both sides have been heard.

The petition for a writ of prohibition to restrain all further proceedings is denied, and the alternative writ is discharged. A peremptory writ may issue prohibiting the superior court from enforcing its preliminary injunction of May 18, 1965, against picketing.

Herndon, Acting P. J., and Katz, J. pro tem.,* concurred.

Petitioner's application for a hearing by the Supreme Court was denied January 12, 1966.

---

*Assigned by the Chairman of the Judicial Council.