[Civ. Nos. 23751, 23996. First Dist., Div. Two. Sept. 25, 1967.]

BERKELEY TEACHERS ASSOCIATION et al., Plaintiffs and Respondents, v. BOARD OF EDUCATION OF BERKELEY UNIFIED SCHOOL DISTRICT et al., Defendants and Respondents; BERKELEY FEDERATION OF TEACHERS, AFL-CIO, LOCAL 1078 et al., Interveners and Appellants.

(Two Cases.)

Victor J. Van Bourg and Levy, DeRoy, Geffner & Van Bourg for Interveners and Appellants.

Johnson & Stanton, Gardiner Johnson, Thomas E. Stanton, Jr., and Marshall A. Staunton for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

TAYLOR, J.—These consolidated appeals from an order granting a preliminary injunction and a judgment permanently enjoining the Berkeley Board of Education from holding an election among its certificated teachers, raise questions of first impression concerning the Winton Act (Ed. Code, §§ 13080-13088; Gov. Code, § 3501). Plaintiffs and respondents, Berkeley Teachers Association and its officers (hereafter collectively referred to as Association), individually and in their representative capacities, initiated this action for declar-

atory and other relief against the members of the Berkeley Board of Education (hereafter Board), and the Superintendent of Schools of the Berkeley Unified School District (hereafter District). The interveners and appellants are the Berkeley Federation of Teachers and its president (hereafter collectively referred to as Federation).

The facts are not in dispute. Both the Association and the Federation are voluntary unincorporated associations of the District's certificated employees. Each organization meets the statutory definition of an employee organization (Ed. Code, § 13081, subd. (a)) ;[1] the District meets the statutory definition of a public school employer (Ed. Code, § 13081, subd. (b)).[2] Pursuant to the Winton Act, the Board on October 19, 1965, adopted its Resolution No. 2860, establishing a negotiating council of nine members "allotted proportionately according to an election of the certificated staff, to represent organizations of certificated staff members in negotiations . . ." On October 22, 1965, the Association filed its complaint alleging that the election procedure violated the Winton Act and the Federation intervened. The preliminary injunction was issued on December 31, 1965, and the permanent injunction on April 29, 1966.

A brief history and description of the Winton Act is necessary for an understanding of the issues presented.[3] In 1961 the Legislature enacted sections 3500-3509 of the Government Code to provide a uniform basis for recognizing the rights of all public governmental employees to join and be represented in their employer-employee organizations or not to join any such organizations and to represent themselves individually. Section 3500 indicates that the representation of public employees in the field of employer-employee relations was no longer the exclusive concern of any public agency of the state, but was instead a matter of general public concern requiring uniform treatment. School districts and their employees and employee organizations were expressly included. In 1965 the

---

[1] "(a) 'Employee organization' means any organization which includes employees of a public school employer and which has as one of its primary purposes representing such employees in their relations with that public school employer."

[2] "(b) 'Public school employer' means a school district, a county board of education, a county superintendent of schools, or a personnel commission of a school district which has a merit system as provided in Chapter 3 of this division."

[3] We are indebted to the excellent memorandum on this subject prepared by Los Angeles County Counsel, H. W. Kennedy.

Legislature adopted the Winton Act which removed school districts from the scope and operation of the 1961 statute (Gov. Code, § 3501) and made the new provisions of sections 13080-13087 of the Education Code applicable only to school districts.

The statement of purposes of the 1965 legislation emphasized the right of public school employees to join organizations of their own choice and be represented by such organizations not only in their employment but also in their professional relationships with their employers and to afford them a voice in the formulation of educational policy. Like its 1961 predecessor, the Winton Act was designed to strengthen existing tenure, merit or civil service systems and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public school employers by which they are employed (Ed. Code, § 13080; cf. Gov. Code, § 3500). The rights of public school employees, their organization and the scope of representation are provided for by sections 13082-13084 of the Education Code (set forth below)[4] which parallel Government Code sections 3502, 3503 and 3504.

The novel provisions of the statute are sections 13085-13087. Section 13085 effectuates the legislative purpose of affording certificated employees a voice in the formulation of educational policy by providing in its first paragraph that the public school employer shall meet and confer "with *representatives of employee organizations* upon request *with regard to all matters relating to employment conditions and employer-employee relations,*" and in addition, "*meet and confer with*

---

[4]Section 13082: "Except as otherwise provided by the Legislature, public school employees shall have the right to form, join and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. Public school employees shall also have the right to refuse to join or participate in the activities of employee organizations and shall have the right to represent themselves individually in their employment relations with the public school employer."

Section 13083: "Employee organizations shall have the right to represent their members in their employment relations with public school employers. Employee organizations may establish reasonable restrictions regarding who may join and may make reasonable provisions for the dismissal of individuals from membership. Nothing in this section shall prohibit any employee from appearing in his own behalf in his employment relations with the public school employer."

Section 13084: "The scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to wages, hours and other terms and conditions of employment."

*representatives of employee organizations representing certificated employees* upon request *with regard to all matters relating to the definition of educational objectives,* the determination of the content of courses and curricula, the selection of textbooks, and other aspects of the instructional program to the extent such matters are within the discretion of the public school employer or governing board under the law. The designation of an administrative officer as provided herein shall not preclude an employee organization from meeting with, appearing before, or making proposals to the public school employer at a public meeting if the employee organization requests such a public meeting.'' (Italics added.)

The first paragraph provides the legislative background for the second, which creates and provides for a negotiating council if more than one employee organization represents certificated employees in the District, as follows: ''Notwithstanding the provisions of Sections 13082 and 13083, in the event there is more than one employee organization representing certificated employees, the public school employer or governing board thereof shall *meet and confer with the representatives of such employee organizations through a negotiating council with regard to the matters specified in this section,* provided that nothing herein shall prohibit any employee from appearing in his own behalf in his employment relations with the public school employer. The negotiating council shall have not more than nine nor less than five members and *shall be composed of representatives of those employee organizations who are entitled to representation on the negotiating council.''* (Italics added.)

The proviso at the beginning of the second paragraph is an indication that what follows is not in all respects in conformity with the provisions of sections 13082 and 13083 (which appear to limit the scope of representation to employer-employee relations and working conditions) as the negotiating council deals with all ''matters specified in this section,'' namely, employment conditions and matters of educational policy. Significantly, the negotiating council does not represent all certificated employees of the District, but is composed of representatives of those employee organizations entitled to be represented on the negotiating council.

Then follows the sentence which sets forth the statutory formula for determining the number of members of the negotiating council, that employee organizations are entitled to

appoint as follows: *"An employee organization representing certificated employees shall be entitled to appoint such number of members of the negotiating council as bears as nearly as practicable the same ratio to the total number of members of the negotiating council as the number of members of the employee organization bears to the total number of certificated employees of the public school employer who are members of employee organizations representing certificated employees. Each employee organization shall adopt procedures for selecting its proportionate share of members of the negotiating council, provided that such members shall be selected no later than October 31 of each school year.* Within 10 days after October 31, the members of the negotiating council shall meet and select a chairman, and thereafter such negotiating council shall be legally constituted to meet and confer as provided for by the provisions of this article. Employee organizations shall exercise the rights given by Section 13083 through the negotiating council provided for in this section." (Italics added.)

Section 13086 briefly indicates that public school employees shall not be intimidated, coerced, etc. because of their exercise of the right to represent themselves individually in their employment relations (§ 13082), and section 13087 then provides: "A public school employer shall adopt reasonable rules and regulations for the administration of employer-employee relations under this article.

"Such rules and regulations shall include provision. for verifying the number of certificated employees of the public school employer who are members in good standing of an employee organization on the date of such verification, and where a negotiating council is required by Section 13085, for the size of the negotiating council. The public school employer may require an employee organization to submit any supplementary information or data considered by the public school employer to be necessary to the verification of the number of members in an employee organization and such information or data shall be submitted by the organization within 10 days after request, provided that membership lists, if requested, shall not be used as a means of violating Section 13086. In addition, such rules may include provisions for (a) verifying the official status of employee organization officers and representatives, (b) access of employee organization officers and representatives to work locations, (c) use of official bulletin boards and other means of communication by employee organ-

izations, (d) furnishing complete and accurate nonconfidential information pertaining to employment relations to employee organizations and (e) such other matters as are necessary to carry out the purposes of this article."

The final portion of the statute, section 13088 (paralleling § 3509, Gov. Code), provides that its enactment shall not be construed to make section 923[5] of the Labor Code applicable.

Both of the courts below apparently concluded that the allotment proportionately of the nine members of the negotiating council by means of an election, participated in by all of the District's certificated employees and in which they are called upon to choose between employee organizations, was not in accord with the intent and purpose of the Winton Act, and was contrary to the express provisions of section 13085 (quoted above) that the members of the negotiating council be selected by the employee organizations representing certificated employees.

The Federation argues that the election procedure is a proper and reasonable method, authorized by section 13087, and necessitated by the fact that the Legislature has not defined the words "members" and "members in good standing" as used in that section with reference to the number of certificated employees of the District who are members in good standing of an employee organization which is to represent them with regard to all matters specified in section 13085.[6] We cannot agree.

The Board's resolution provides that all of the District's certificated employees, irrespective of whether or not they are members of an employee organization,[7] may participate in an election for the purpose of determining which organization each employee wishes to represent him on the negotiating council. However, as indicated above, section 13085 does not provide for a negotiating council to represent all certificated

[5]The section states that the public policy of the state recognizes the right of individual workmen to advance their interests by organization and favors collective bargaining (*American Radio Assn.* v. *Superior Court,* 237 Cal.App.2d 891 [47 Cal.Rptr. 419]; *Chavez* v. *Sargent,* 52 Cal.2d 162 [339 P.2d 801]).

[6]We note that in making this argument, the Federation omitted from its brief the portion of section 13085 relating to the appointment of the negotiating council.

[7]The complaint alleged that more than 70 percent of the District's certificated employees were members of the Association; and that 10 percent of the District's certificated employees were not members of any organization representing them.

employees of the District, but a negotiating council composed of representatives of those employee organizations entitled to be represented on the negotiating council. Then, section 13085 provides that the members of the negotiating council are to be appointed, according to the proportionate allotment, by the organizations representing certificated employees. The formula for determining membership on the negotiating council does not take into account the total number of certificated employees who are employed by the District. It sets the proportion as nearly as practicable at the ratio which the certificated employee membership of each of the respective organizations bears to the total certificated employee membership of all such organizations.

■ Furthermore, while section 13087 contemplates that a public school employer may establish procedures for determining which of its certificated employees are members of one or more employee organizations, *an election is not such a procedure.* The procedure contemplated is merely one of ascertainment and verification. The term "election" implies an ability to choose between two or more alternatives. Certificated employees who are members of an employee organization have no choice remaining open to them. Their membership in good standing in an employee organization must be accepted as a designation by them of that organization as authorized to represent them on a negotiating council. The formula of section 13085 for determining the entitlement of an employee organization to appoint members to a negotiating council requires only that those employees who are members of an employee organization may be counted. Under the Winton Act, an election is an inappropriate procedure to ascertain or verify membership in an employee organization.

■ It is true that the Winton Act does not precisely define the word "member" as applied to an "employee organization" representing certificated employees. A reading of the statute as a whole, however, clearly indicates that "member" is used in its normally accepted sense and is to be given its ordinary and usual meaning of a certificated employee who joins an employee organization representing certificated employees. The statute does not allow for the interpretation of "member" (advocated by the Federation) which would permit organizational membership to be determined on the basis of preference or choice of all certificated employees whether or not the voting employees are "members

in good standing'' of the organization. The statute requires organizations (employee organizations representing certificated employees of the District) which have ''members in good standing.'' Section 13087 recognizes that the employee organization is in the best position to advise the District as to the number of certificated employees who are members in good standing on the verification date.

Thus, organizational membership and the number of employees who are members are both considered by the Legislature as facts within the knowledge of the particular employee organization representing certificated employees.[8] By section 13083, the Legislature gave each employee organization the right to represent its members. To further protect the organizations, they were also given the power to adopt reasonable restrictions as to joining and dismissal of individual members. Employee organizations would be deprived of the benefits of section 13083, if membership were determined by the suggested election. In addition, the formula for a certificated employee organization's *entitlement to appoint members* on the negotiating council would be entirely frustrated if certificated employees who are *members* of a certificated employee organization were determined by the suggested election rather than by ''membership in good standing.''

█ Membership in voluntary unincorporated associations is a personal right based on contract, and can only be divested in the manner provided by the contract (5 Cal.Jur.2d, pp. 463-465). █ Once acquired, membership in a labor organization is a property right that the courts will protect. In *DeMille* v. *American Federation of Radio Artists*, 31 Cal.2d 139, the court said at page 149 [187 P.2d 769] : ''The member and the association are distinct. The union represents the common or group interests of its members, as distinguished from their personal or private interest. 'Structurally and functionally, a labor union is an institution which involves more than the private or personal interests of its members. It represents organized, institutional activity as contrasted with wholly individual activity. This difference is as well defined as that existing between individual members of the union.'

---

[8]The federal courts similarly stress as the essential elements of membership in an organized group ''the desire of an individual to belong to the organization and a recognition by the organization that it considers him as a member'' (*Killian* v. *United States,* 368 U.S. 231, 249-250 [7 L.Ed.2d 256, 269, 82 S.Ct. 302]; quoting from *Jencks* v. *United States,* 353 U.S. 657, 679 [1 L.Ed.2d 1103, 1118, 77 S.Ct. 1007].)

(*United States* v. *White,* 322 U.S. 694, at page 701 [88 L.Ed. 1542, 1547, 64 S.Ct. 1248, 152 A.L.R. 1202].)'' Recently, our Supreme Court has given recognition to the rights of duly authorized members of unincorporated associations to represent the membership of such an association in a representative court action such as the one here involved (*Professional Fire Fighters, Inc.* v. *City of Los Angeles,* 60 Cal.2d 276, 283 [32 Cal.Rptr. 830, 384 P.2d 158]; *International Assn. of Fire Fighters* v. *City of Palo Alto,* 60 Cal.2d 295 [32 Cal.Rptr. 842, 384 P.2d 170]).

We cannot agree with the Federation's contention that the verification of membership provisions of section 13087 create an ambiguity because the dual membership of many certificated employees[9] makes such verification meaningless. We think that the proportional formula for the appointment of members to the negotiating council adequately takes care of any plural membership problems. Precisely because the dual membership problem was anticipated, section 13085 provides that the number of members on the negotiating council that an organization may appoint shall bear ''as nearly as practicable'' the same ratio to the total number of members of the council as the number of members of the organization bears to the total number of certificated employees who are members of employee organizations. If, for example, an employee's membership is counted in both or all of the organizations of which he is a member for the purpose of determining the make-up of the council, the plural memberships will simply cancel each other out.

■ Furthermore, any action by a public school employer requiring a certificated employee who belongs to more than one organization to designate which single organization may count him as a member for purposes of representation on the negotiating council, would amount to an unwarranted interference by an employer with the relationship between the employee organization and its members. Such relationship is a contractual one that imposes duties as well as confers privileges on the member (*DeMille* v. *American Federation of Radio Artists,* 31 Cal.2d 139, 146 [187 P.2d 769].) ■ One of the duties of a member of an organization is loyalty to the basic purposes of the organization. (*Davis* v. *International*

---

[9]Although no figures are provided, all parties assume the existence of a substantial number of overlapping memberships as certificated employees may be members of several organizations and join them for different purposes.

*Alliance etc. Emp.*, 60 Cal.App.2d 713, 715 [141 P.2d 486].) Thus, where an employee joins an organization that has as one of its primary purposes representing employees in their relationships with a public school employer (Ed. Code, §13081, subd. (a)), an obligation to permit the organization to count him as a member for the purposes of such representation, including participation in a negotiating council, can properly be implied from the membership relationship or imposed by the by-laws (*Smith* v. *Kern County Medical Assn.*, 19 Cal.2d 263, 265 [120 P.2d 874]; *Neto* v. *Conselho Amor DaSociedade*, 18 Cal.App. 234 [122 P. 973]). Any interference with this contractual obligation by the public school employer would constitute at the most an actionable tort (*Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 35 [112 P.2d 631]) or at least an idle act, since the employee could refuse to make a choice between organizations. Even if such choice were made, each organization could rely on its contractual right to count the employee as a member.

The Federation also argues that the Board may lawfully provide for an election among its teachers to determine their choice of organizations to represent them on the negotiating council as the Winton Act was designed to adopt for public school employees collective bargaining devices long accepted in the field of private employment. As indicated above, section 13088, like its 1961 predecessor (Gov. Code, §3509), expressly provides that section 923 of the Labor Code does not apply to public school employees. ▪ Even in the absence of such a provision, it is well settled that by enacting section 923 of the Labor Code, the Legislature did not intend to extend to public employment the collective bargaining procedures and devices applicable to private employment (*Nutter* v. *City of Santa Monica*, 74 Cal.App.2d 292, 296-301 [168 P.2d 741]; *Los Angeles Met. Transit Authority* v. *Brotherhood of R.R. Trainmen*, 54 Cal.2d 684 [8 Cal.Rptr. 1, 355 P.2d 905]).[10]

---

[10]As stated in *State* v. *Brotherhood of R.R. Trainmen*, 37 Cal.2d 412, 417 [232 P.2d 857]: "A concise statement of the characteristics distinguishing public from private employment in this regard appears in a letter from President Roosevelt to the National Federation of Federal Employees, dated August 16, 1937: 'All Government employees should realize that the process of collective bargaining, as usually understood, cannot be transplanted into the public service. It has its distinct and insurmountable limitations when applied to public personnel management. The very nature and purposes of Government make it impossible for administrative officials to represent fully or to bind the employer in mutual discussions with Government employee organizations. The

The legislative history of the Winton Act indicates that on May 6, 1965, the Assembly flatly rejected two amendments substituting the collective bargaining procedures applied in private employment.[11] Thus, the conclusion is inescapable that the Legislature intended to bar representational elections from the field of public school employment and expressly rejected the collective bargaining approach of having a single employee organization represent all certificated employees.[12]

In view of the above, we conclude that the election envisioned by the Board's resolution was contrary to and in conflict with the clear provisions of the Winton Act. As the governing body of a school district has no authority to enact a rule or regulation that alters the terms of a legislative enact-

employer is the whole people, who speak by means of laws enacted by their representatives in Congress. Accordingly, administrative officials and employees alike are governed and guided, and in many instances restricted, by laws which establish policies, procedures, or rules in personnel matters.' (Quoted in *City of Springfield* v. *Clouse*, 356 Mo. 1239 [206 S.W.2d 539, 542-543]; *C.I.O.* v. *City of Dallas* (Tex.Civ.App.) 198 S.W.2d 143, 144-145.)''

[11]''1. Assemblyman Ryan proposed amendments to delete the provisions for a representational negotiating council as now contained in the second paragraph of Section 13085, and to insert in lieu thereof provisions for the election by secret ballot of the members of the negotiating council, which 'members elected to the negotiating council shall be certificated employees who are employed as classroom teachers and who are under contract to the public school employer for the ensuing school year.' The amendments were refused adoption: AYES—28; NOES—41. (Assembly Journal for May 6, 1965, pp. 3045-3046, 3047-3048)

''2. Assemblyman Stanton proposed an amendment, to make the collective bargaining provisions of Labor Code Section 923 'applicable to public school employees', by deleting the word 'not' in Section 13088, so that section would read: 'The enactment of this article shall not be construed as making the provisions of Section 923 of the Labor Code applicable to public school employees.' This amendment was refused adoption, without a roll-call vote. (Assembly Journal for May 6, 1965, p. 3048)''

The author of the statute, in a declaration admitted into evidence, stated: ''The issue of voluntary employee association representation versus a governing board-called secret ballot election of all school district employees irrespective of their affiliations was thoroughly debated by members of the Legislature, both in committee and on the floor of the Assembly. Whenever action was taken on the issue, the election was rejected on the ground that AB 1474 was designed to protect, promote and regulate voluntary public school employee associations and to provide means whereby these associations might select spokesmen to represent their members before the governing board of the school district. Both the members of the Legislature and witnesses who testified before committees of the Legislature agreed that a board-called election to bypass these existing associations was in conflict with these objectives.''

[12]This rejection has been recognized as a novel innovation in the field of public employment (Section of Labor Relations, Committee on Law of Government Employee Relations, A.B.A. 1966 Proceedings, p. 151).

ment (*Renken* v. *Compton City School Dist.*, 207 Cal.App.2d 106, 114 [24 Cal.Rptr. 347]), the court below properly granted the relief requested by the Association.

Affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 22, 1967.