[Civ. No. 12091. Fourth Dist., Div. Two. Oct. 13, 1972.]

WESTMINSTER SCHOOL DISTRICT OF ORANGE COUNTY et al.,
Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
WESTMINSTER TEACHERS ASSOCIATION et al.,
Real Parties in Interest.

## COUNSEL

Adrian Kuyper, County Counsel, and Spencer E. Covert, Jr., Deputy County Counsel, for Petitioners.

Peter T. Galiano and Joseph R. Grodin as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Warren, Adell & Miller, Charles Warren, Hirsch Adell and Edward G. Scholtz for Real Parties in Interest.

## OPINION

**KAUFMAN, Acting P. J.**—This proceeding involves a dispute arising out of provisions of the Winton Act (Ed. Code, § 13080 et seq. [Stats. 1965, ch.

2041, as amended by Stats. 1970, chs. 1412, 1413]). By minute orders dated April 19 and May 2, 1972, the Orange County Superior Court undertook to appoint the third member of the persistent disagreement committee (Ed. Code, § 13087.1) upon the failure of the parties to agree to such third member. Petitioners seek a writ of mandate contending the court has no jurisdiction to appoint such third member and that the court abused its discretion in appointing as the purported neutral third member Robert G. Miners, a professional arbitrator. This court issued an alternative writ of mandate and stay order to review the matter.

### Material Facts

The Winton Act, among other things, requires a public school employer to "meet and confer" with representatives of certificated employee organizations upon request with regard to all matters relating to employment conditions and employer-emplyee relations as well as procedures relating to the definition of educational objectives, the determination of the content of courses and curricula, the selection of text books, and other aspects of the instructional program to the extent such matters are within the discretion of the public school employer or governing board under the law. (Ed. Code, § 13085.)[1]

" 'Meet and confer' means that a public school employer . . . and representatives of employee organizations shall have the mutual obligation to exchange freely information, opinions, and proposals; and to make and consider recommendations under orderly procedures in a conscientious effort to reach agreement by written resolution, regulation, or policy of the governing board effectuating such recommendations." (§ 13081, subd. (d).)

" 'Persistent disagreement' means a disagreement between the parties to meeting and conferring . . . that has not been resolved to the mutual satisfaction of the parties through such meeting and conferring within a reasonable period of time after the initial presentation of proposals, which shall be not less than 30 days, except by mutual consent." (§ 13081, subd. (e).)

Section 13087.1 (added by Stats. 1970, ch. 1413, § 5, p. 2686) provides: "A public school employer shall meet and confer with representatives of employee organizations or the certificated employee council pursuant to Section 13085 with regard to a procedure for the resolution of persistent disagreements which may include factfinding and shall adopt rules and regulations establishing such a procedure, which procedure shall be

---

[1] All citations of code sections will refer to the California Education Code unless otherwise indicated.

mutually acceptable to the parties meeting and conferring. In the event the parties cannot agree on a procedure for the resolution of persistent disagreements, the parties, at the request of one of them, shall refer any persistent disagreement to a committee of three persons, one selected by the school employer, one selected by the employee organization or the certificated employee council, as the case may be, and in turn those persons shall select the third member. The committee shall report its findings to the parties at a public meeting of the parties. The committee may report recommendations to the parties at a public meeting upon the prior written agreement of both parties. Such findings and recommendations shall not be binding on the parties."

To facilitate presentation and, hopefully, comprehension, we shall refer herein to Westminster School District sometimes as petitioner and sometimes as District, and we shall refer to the Certificated Employee Council as the real party in interest and sometimes as the Council, notwithstanding our recognition that there are multiple parties petitioners and real parties in interest to this proceeding.[2]

Pursuant to section 13087.1, the District and the Certificated Employee Council undertook to meet and confer with regard to establishing a procedure for the resolution of persistent disagreements. The final proposal submitted by the Council would have established an elaborate system of appeal, including the use of a three-member fact-finding panel in the event a grievance could not be resolved by the school superintendent and the teacher involved. The superintendent and teacher would each select one member of the fact-finding panel, and the two thus selected would select a third member. If the two members selected could not agree upon a third member, the third member would be appointed by American Arbitration Association. The District's proposals for the establishment of a grievance procedure also included a three-member fact-finding panel. However, all three members of the panel would be employees of the school district and/or residents of the school district. The District would select one member; the teachers in the district would select one member; and the two members thus selected would select the third member.

---

[2]Additional petitioners are the Board of Trustees of the Westminster School District and Lee T. Paterson, the person selected by the school district and its board of trustees to serve as their representative on the persistent disagreement committee. Additional real parties are the Westminster Teachers' Association, a nonprofit corporation affiliated with the California Teachers' Association, which has as one of its primary purposes representation of its members (certificated employees) in their relations with the school district, and Thomas L. Brown, the person selected by the Certificated Employee Council to represent it on the persistent disagreement committee.

After considerable "meeting and conferring," the District and the Council were unable to agree upon a procedure for the resolution of persistent disagreements acceptable to both of them, so they embarked upon the appointment of a persistent disagreement committee in accordance with the procedures set forth in section 13087.1. The Council designated as its representative Thomas L. Brown; the District designated as its representative Lee T. Paterson. Each side then submitted a list of persons suggested for selection as the third member of the persistent disagreement committee, but the two designated members were unable to agree upon a third member.

On January 18, 1972, real parties filed in the Orange County Superior Court a document entitled "PETITION TO APPOINT NEUTRAL MEMBER OF PERSISTENT DISAGREEMENT COMMITTEE," naming as adverse parties thereto the petitioners herein. The relief requested was that the court appoint the third neutral member to the committee or, in the alternative, that the court nominate five persons from a list obtained from a governmental agency or a private disinterested association, one of whom should be selected by the two existing members of the committee as the third member or, failing that, should be appointed as such third member by the court. Contemporaneously, real parties noticed a motion for the appointment of the third member of the committee in accordance with their petition.

On February 11, 1972, petitioners herein filed an answer, together with points and authorities in opposition to real parties' petition and motion, challenging the jurisdiction of the court to appoint the third member to a persistent disagreement committee in lieu of appointment of such member by agreement of the parties.

On February 25, 1972, the motion for appointment of the third member was argued. The court indicated its belief that it had authority to appoint a third member and its intention to obtain nominees from the office of the State Superintendent of Public Instruction. By letter dated March 8, 1972, the court indicated that this was its decision but that by inadvertence a list of nominees had been solicited from the office of the Superintendent of Schools of Los Angeles County rather than the State Superintendent of Schools as planned. In the hope that one of these nominees might prove satisfactory to both parties, this list of nominees was appended to the court's letter of March 8.

By a copy of a letter dated March 13, 1972, addressed to counsel for real parties, the court was advised by counsel for the school district that it was agreeable to selecting one of the nominees supplied by the office of the Los Angeles County Superintendent of Schools and that, if the parties

could not agree upon a single nominee, it would be agreeable to a procedure of each party striking one name alternately until a single nominee was left who should be deemed appointed.

By letter dated the same date, March 13, 1972, counsel for real parties advised the court of their unwillingness to select a third member from the nominees obtained from the office of the Los Angeles County Superintendent of Schools and suggested that a list of nominees be obtained from the State Conciliation Service.

By letter dated April 11, 1972, the court advised the parties that, "because of several recent developments the Court has decided to use the services of the State Conciliation Service," and on April 19, 1972, the court made a minute order setting forth the names of five persons nominated by the State Conciliation Service and ordered the respective parties to take turns in striking one name from the list until each side had stricken two names, the remaining person to be appointed by the court as the neutral member of the committee. The order further provided that, in the event either party refused to follow this procedure the other party might select one nominee who would be appointed as the third member.

By letter of its counsel, dated April 21, 1972, the District protested the court's change in decision not to seek nominees from the office of the State Superintendent of Public Instruction; indicated its dissatisfaction with the reference in the court's letter dated April 11 referring to "several recent developments"; requested an opportunity to respond to any such developments before rendition of a final decision; and questioned the propriety of selecting as the third neutral member any of the nominees obtained from the State Conciliation Service, two of whom were members of the American Arbitration Association and four of whom were professional arbitrators, when one of the matters in controversy between the parties was whether the persistent disagreement procedure should include appointment of a third person to the fact-finding panel by arbitration in the event of impasse.

The District having failed to avail itself of the procedure set forth in the court's minute order of April 19, and real parties having nominated Robert G. Miners from the list submitted by the State Conciliation Service, the court, by minute order dated May 2, 1972, appointed Robert G. Miners the third member of the persistent disagreement committee. According to the information supplied in connection with the nomination of Mr. Miners, he is a professional arbitrator as well as an employee-employer relations consultant and a professor of law at the California Western University School of Law in San Diego.

## Adequate Remedy by Appeal

Real parties contend that the minute order dated May 2, 1972 is finally dispositive of the rights of the parties; that it is, therefore, appealable; and that, therefore, petitioners herein have an adequate remedy by way of appeal and should be precluded from relief by way of extraordinary writ. We need not undertake to determine herein whether the minute order dated May 2, 1972 constituted an appealable order.[3] ▇ Our issuance of the alternative writ necessarily determined that petitioners have no other adequate remedy in the ordinary course of law. (*Brown* v. *Superior Court,* 5 Cal.3d 509, 515 [96 Cal.Rptr. 584, 487 P.2d 1224]; *Babb* v. *Superior Court,* 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Erlich* v. *Superior Court,* 63 Cal.2d 551, 557 [47 Cal.Rptr. 473, 407 P.2d 649].)

## Jurisdiction to Appoint Third Member to Committee

Although real parties employed and prevailed upon the court to employ the statutory procedures prescribed for the appointment of a neutral arbitrator (see Code Civ. Proc., §§ 1280, subd. (d), 1281.6), they do not contend that there exists between the parties any written agreement for arbitration or that the arbitration statutes are directly applicable to the selection of a persistent disagreement committee under Education Code, section 13087.1. Their contention is that section 13087.1 creates a substantive right to the formation of a persistent disagreement committee; that, although the statute prescribes a method for selection of the members of such a committee by agreement of the parties, it provides no procedure for selecting the third member if the two members designated by the parties

---

[3]From a theoretical standpoint, we are sorely troubled by the procedure employed in the superior court. Real parties concede that there is no written agreement for arbitration (see Code Civ. Proc., §§ 1280, 1281), yet they obtained the relief sought by the petition and motion procedure specified in Code of Civil Procedure, section 1281.6 dealing with the appointment of an arbitrator. Even if the court had jurisdiction to appoint the third member to the persistent disagreement committee, the propriety of real parties employing the petition and motion procedure prescribed in the arbitration statutes (Code Civ. Proc., § 1281.6) is dubious. That procedure is specifically prescribed for arbitration matters in which the right to appeal is severely restricted. (See Code Civ. Proc., § 1294; cf. *Steelform Contracting Co.* v. *Baldwin Contracting Co.,* 209 Cal.App.2d 177, 178 [25 Cal.Rptr. 916].) Except for special proceedings prescribed by statute, "[t]here is in this state but one form of civil actions for the enforcement or protection of private rights and the redress or prevention of private wrongs." (Code Civ. Proc., § 307.) "A civil action is commenced by filing a complaint with the court." (Code Civ. Proc., § 411.10.) In the normal civil action, we can think of only two motions that can result directly in the court granting the relief prayed for in the complaint: a motion for judgment on the pleadings and a motion for summary judgment. Even then, it is not the order granting the motion that is dispositive but, rather, the judgment entered following the order granting the motion.

cannot agree; and that, therefore, the court must have the power to fashion a remedy for the appointment of a third member under such circumstances because, otherwise, the statutorily created right would be meaningless. (Cf. Civ. Code, §§ 1428, 3523; *Paxton* v. *Paxton,* 150 Cal. 667, 670-671 [89 P. 1083].) ■ This contention has some appeal, but we are persuaded by the legislative history of the Winton Act, its purpose and its relation to other statutes pertaining to public employer-employee relations, that the courts are not authorized to appoint a member of the legislatively conceived and statutorily prescribed persistent disagreement committee. Having so concluded, we do not reach the contention that the court abused its discretion in appointing Professor Miners as such third member.[4]

The background and history of the California Legislature's attempts to deal with public employer-employee relations in this state, including the background and reasons for enactment of the Winton Act, are admirably reviewed and discussed in *California Federation of Teachers* v. *Oxnard Elementary Sch.,* 272 Cal.App.2d 514, 520-524, 529-530, 532-535, 538-540 [77 Cal.Rptr. 497] (see also *Berkeley Teachers Assn.* v. *Board of Education,* 254 Cal.App.2d 660, 663-664 [62 Cal.Rptr. 515]), and it would serve no useful purpose to repeat here what is there set forth. Suffice it to summarize as follows. "The California Legislature has clearly been attempting to reconcile by selective innovation the divergent elements inherent in public employer-employee relations including the acknowledged distinctions in the status and obligations of public and private employees, as well as the various occupations and professions represented by public employment." (*California Federation of Teachers* v. *Oxnard Elementary Sch., supra,* 272 Cal.App.2d at p. 523.) Although public school employers and employees were originally included within the purview of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) first enacted in 1961, in 1965, in recognition of the unique relationship between public school employers and employees, the Legislature enacted the Winton Act (Ed. Code, § 13080 et seq.) applicable only to public school employers and employees. (*California Federation of Teachers* v. *Oxnard Elementary Sch.,*

---

[4]The abuse of discretion contention is not fully articulated. No attack is made upon the integrity or ability of Professor Miners. Rather, as we understand it, the contention is that, inasmuch as several of the issues in controversy between the parties are whether or not the fact-finding panel should be composed of professional arbitrators and whether, in the event of impasse, the third member of the fact-finding panel should be appointed by the American Arbitration Association, it was inappropriate to appoint a professional arbitrator as the neutral third member of the persistent disagreement committee, particularly in view of the fact that the decision of the court to employ the services of the State Conciliation Service was based on "several recent developments," unspecified and with respect to which the district was afforded no opportunity to be heard.

*supra,* 272 Cal.App.2d at pp. 522-523; *Berkeley Teachers Assn.* v. *Board of Education, supra,* 254 Cal.App.2d at pp. 663-664.)

■ The Winton Act does not embody the concept of collective bargaining. (Ed. Code, § 13088; *California Federation of Teachers* v. *Oxnard Elementary Sch., supra,* 272 Cal.App.2d at pp. 523, 534, 538-540; *Berkeley Teachers Assn.* v. *Board of Education, supra,* 254 Cal.App.2d at p. 671.) Its provisions make clear that the right conferred upon certificated public school employees is to voice their views and ideas through recognized representatives and to have these views and ideas considered by the public school employer but that all final decisions are left to the public school employer. (§§ 13085, 13088.) "The local public school board, which is traditionally composed of elected interested lay personnel, currently finds itself in a singular position relative to its functions. It must respond on the one hand to its constituents, on the other to its legislative peers, and it is confronted in every direction by organizations of certificated employees which have recently risen to contend for teachers the same rights to self determination of their employment conditions as their counterparts in private industry." (*California Federation of Teachers* v. *Oxnard Elementary Sch., supra,* 272 Cal.App.2d at p. 538.) The Winton Act is founded upon the expectation of discussion and cooperation between the local school board and its highly educated, trained certificated employees devoted to their occupational goals. (*California Federation of Teachers* v. *Oxnard Elementary Sch., supra,* 272 Cal.App.2d at pp. 538-540.) Consistent with this philosophy, section 13087.1 provides for the establishment of a persistent disagreement procedure "mutually acceptable to the parties meeting and conferring" and provides, in the event no such mutually acceptable procedure can be agreed upon, for the formation of a persistent disagreement committee selected by the parties. Although the only function of this committee is to "report its findings to the parties at a public meeting," and, if the parties agree, to report recommendations to the parties, and although neither such findings nor recommendations are binding on the parties, the imposition on either party of a member of the persistent disagreement committee selected by a court rather than by agreement of the parties is wholly inconsistent with the philosophy of the Winton Act that all matters are to be resolved by cooperation and agreement between the parties and, failing that, by the public school employer.

We are further confirmed in the foregoing conclusion by observing that in 1968 and 1971, the Meyers-Milias-Brown Act was amended to provide for possible mediation in the event the public agency and recognized employee organization failed to reach agreement (Gov. Code, § 3505.2 [Stats. 1968, ch. 1390]) and, in the absence of local procedure for resolving

such disputes, for submission of disputes on the appropriateness of a unit of representation to the Department of Conciliation of the Department of Industrial Relations for mediation or recommendation (Gov. Code, § 3507.1 [Stats. 1971, ch. 1709]), whereas no such provisions have been incorporated into the Winton Act. On the contrary, it appears from a summary contained in petitioners' traverse to real parties' answer that in each year since 1968, measures have been introduced in the Legislature for the amendment of the Winton Act designed to introduce concepts of mediation or arbitration in the event of persistent disagreement, some of which would apparently have covered the very situation presented by the case at bench. (See Senate Bill 458 and Assembly Bills 678 and 1872, 1968 Legislative Session; Senate Bill 1232 and Assembly Bill 2128, 1969 Legislative Session; Senate Bills 293, 888, 1193 and Assembly Bills 820, 2245, 1970 Legislative Session; Senate Bill 324 and Assembly Bills 719, 2473, 2572, 2833, 1971 Legislative Session; Senate Bill 1265 and Assembly Bills 545, 2252, 1972 Legislative Session.) To date, the Legislature has not seen fit to adopt any of these measures.

Having carefully considered the problem of employment relations in the public school systems, the Legislature has enacted the Winton Act as a unique, experimental procedure representing its tentative solution. (*California Federation of Teachers* v. *Oxnard Elementary Sch., supra,* 272 Cal.App.2d at pp. 535, 540.) The act provides for the selection of a persistent disagreement committee of three members by agreement of the parties and their representatives. (§ 13087.1.) Obviously, it was foreseeable to the Legislature that the parties might not be able to agree upon the selection of the third member of such committee (see Senate Bill 324 and Assembly Bill 2833, 1971 Legislative Session; cf. Gov. Code, §§ 3505.2, 3507.1), yet the Legislature has provided no procedure for imposing on either party a member of such committee selected by the court. Both the philosophy underlying the act and the Legislature's refusal to adopt measures designed to establish such a procedure persuade us that the omission was intentional, not inadvertent. It is inappropriate for the courts to alter a comprehensive, unique, experimental scheme enacted by the Legislature by interjecting therein procedures intentionally omitted by the Legislature.

Let a peremptory writ of mandate issue to the Superior Court of the State of California in and for the County of Orange commanding it to vacate its orders dated April 19 and May 2, 1972, in case number 189232 entitled Westminster Teachers Association, et al. v. Westminster School District of Orange County, et al., and to enter judgment dismissing real parties' PETITION TO APPOINT NEUTRAL MEMBER OF PERSISTENT DIS-

AGREEMENT COMMITTEE. The stay order heretofore made by this court is vacated and the alternative writ of mandate heretofore issued is discharged.

Gabbert, J., and Tamura, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied December 13, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.